### EWING *v.* FREEMAN, and *vice versa.*

1. It was competent for an attorney at law, in response to a money rule brought against him by a client, to set up the defense that before he had been given an opportunity to account for money collected by him and before service of the rule upon him, the money in his hands had been garnished by a creditor of the movant; and when on the trial of such rule it appeared that the attorney had paid the money into court and had taken the proper steps to make such creditor a party in order that he might be compelled to contest with the movant for the fund in controversy, the attorney should have been regarded as a mere stakeholder, it also appearing that he had not, prior to the service upon him of the summons of garnishment, committed a breach of his legal duty to account to his client for the money collected in the latter's behalf.

(*a*) A defense of the nature above indicated having been established in the present case by a verdict in which the jury also found that the movant was entitled to the money which had been so paid into court, the amount being the same as that in the attorney's hands at the date of the service of the rule, it was proper to adjudge that this fund be paid to the movant; but it was erroneous to also render a judgment for the same against the attorney, with interest thereon from that date at the rate of twenty

per cent. per annum; nor should the costs of the proceeding have been taxed against him.

2. That the court allowed the respondent to interpose the additional defense that another person, who was insolvent and who was indebted to the former in an amount stated, was a party at interest in the rule brought against the respondent, for the reason that the movant had assigned to this other person, either in whole or in part, his claim to the money in controversy, can not afford to the movant any legal cause of complaint, the jury having found against this contention on the part of the respondent, and in favor of the movant for the full amount to which he was justly entitled.

3. Nor could the movant amend his rule by setting up a claim for damages predicated upon the ground that the respondent had without authority compromised a suit he had brought in the movant's behalf and had thus collected the money for which the rule was brought. Having elected to ratify, and demand the proceeds of, this compromise, the plaintiff could not at the same time repudiate it and hold the attorney responsible in damages for his alleged breach of duty.

Argued February 22, — Decided March 25, 1898.

Rule against attorney.   Before Judge Henry.   Floyd superior court.   January term, 1897.

*Reece & Denny, McHenry & Nunnally* and *L. A. Dean,* for Ewing.   *Henry Walker,* contra.

LUMPKIN, P. J.   At the instance of Hilliard Freeman, a rule was brought against J. W. Ewing, as an attorney at law, for money alleged to have been collected by him for Freeman and not paid over on demand.   The respondent made answer, in substance, as follows:   He had been employed by the movant to collect a claim against one Ballew, and had instituted a suit for that purpose.   This suit had subsequently been dismissed, a compromise having been effected by Ewing upon the faith of an instrument in writing, signed by Freeman, giving him "full, complete, and discretionary power in the matter of effecting a settlement."   Only a small portion of the amount agreed upon in the compromise was paid in cash, Ballew giving his notes for the balance.   Almost immediately after this suit was dismissed, Ewing was served with a summons of garnishment, sued out by Ballew, who had commenced an action against Freeman upon an open account.   At a subsequent term of the court this action was dismissed by Ballew,

during the absence from court of Ewing and without his knowl-
edge.   Learning of such dismissal on the following day, how-
ever, Ewing "immediately endeavored to find [his client] in
order to pay over to him the money belonging to him," but
"found great difficulty in locating" Freeman, and did not suc-
ceed until the following week, when he came to Ewing's office.
The latter told Freeman "he was ready to pay over the money·
due him," but Freeman "replied that he could not take the
money, for the reason that he had given a paper" to certain
named parties, authorizing them to collect it.   Ewing then said
"he did not intend having any dealings" with these parties,
"but if [Freeman] would get his lawyer, Mr. Henry Walker,
he would make a statement and pay over the money in his
[Ewing's] hands at once."   Thereupon, Freeman "denied that
said Henry Walker was his lawyer or had anything to do with
said settlement."   Ewing urged his client to procure some one
to represent him in making a settlement, and suggested the
names of several persons, but Freeman "replied that he was
afraid to make any settlement except through" the parties he
had already authorized to collect the money.   At a subsequent
·interview between Ewing and Freeman, the latter again de-
clined to receive the money, and repeated his denial that Henry·
Walker was his attorney or had any "right to act for him."
Later, Ewing received a letter from Walker, inclosing a written
demand upon him for a settlement in behalf of Freeman.   To
this letter Ewing made reply in writing, "stating his readiness,
at any time, to make settlement with [Walker] if he would call
with written authority for the payment of said money;" but
though Walker acknowledged receipt of this communication,
and Ewing "afterwards saw said Walker and expressed a de-
sire to settle said matter as soon as he called with authority to
make settlement," the latter made no further demand upon
him for the money.   In requiring Walker to show his author-.
ity to act for Freeman in the matter, Ewing was influenced
only by a desire to protect himself, his former client having
twice denied that Walker was authorized to represent him in
effecting a settlement.

  It was further alleged by the respondent, that prior to the

service upon him of the rule, though subsequently to what is detailed above, another summons of garnishment, sued out by one Price, who claimed to be a creditor of Freeman, was directed to and served upon respondent. Accordingly, he prayed that he might be permitted to pay the money in his hands into court, that Price be made a party in order that he might be compelled to contest with the movant over the fund; and that, in the meantime, Price be enjoined from prosecuting further the garnishment proceeding. By counter-petition, Ewing also set up that Ballew, in pursuance to some arrangement between him and Freeman, had become entitled to the whole or a part of the money in controversy, as between them; was a secret party to the rule against respondent, and was really the principal party at interest therein. Respondent further alleged that Ballew was insolvent and was indebted to him in an amount stated, and prayed that he be allowed to set up this claim as a set-off against the demand upon him on which the money rule was predicated. It appears from the record that Ewing, in conformity to the offer made by him in his answer, promptly paid into court the sum of $189.42, which he claimed was the entire amount for which he was liable to account. The case coming on to be heard, the jury found, in response to certain questions propounded to them by the court, that this was the precise sum in the hands of respondent at the date of the service upon him of the rule; that as between Freeman and Ballew the whole of this amount belonged to the former, and that a demand therefor had been made in writing "by Henry Walker, as atty. for Hillyard Freeman," prior to the service of the rule upon the respondent, but that Freeman "having refused to receive the money, and denying that Henry Walker was his atty., it was not J. W. Ewing's legal duty to pay over said money," and no interest was due thereon on the date the rule was issued. The trial judge, upon the above findings of fact, rendered judgment against Ewing for "the sum of one hundred and eighty-nine and 42/100 dollars, with interest at twenty per cent. per annum" from the date of the service of the rule upon him, said judgment to "be enforced by attachment as provided by statute." By this judgment it was also "ordered

that the clerk of this court do pay over to Hillyard Freeman, the plaintiff in this rule, instanter," the fund paid into court, less half the fee of the stenographer for reporting the testimony, taking the plaintiff's "receipt for the same." The entire costs of the proceeding were also adjudged against the respondent. To this judgment Ewing excepted, contending that, having paid into court the full amount for which the jury found he was liable to account, no personal judgment should have been rendered against him in any amount, nor should he have been taxed with the costs of the case. The movant, by cross-bill of exceptions, complains here of certain interlocutory rulings made by the trial judge, which will be briefly dealt with in the second and third divisions of this opinion.

1. If the failure of the respondent to pay over to his client the money collected in the latter's behalf involved no breach of legal duty on the part of the respondent, it was unquestionably his right to set up as a defense to the rule that before service thereof upon him the fund in his hands had been garnished at the instance of a creditor of the movant. The verdict establishes the proposition that Ewing had not been guilty of any breach of duty; and he having taken the proper steps to have this creditor made a party, and having paid into court the full amount to which Freeman was entitled, Ewing occupied the position of a mere stakeholder, as regards these two claimants of the fund, and should have been discharged by the court and relieved of all personal liability in the matter. Nor was it proper to tax against him all the costs of the proceeding. Having failed to establish the allegations of his counter-petition, the costs incident thereto should be borne by him, but this should be the extent of his liability. The effect of the judgment rendered by the court was to impose upon the respondent the burden of twice accounting to the movant for the amount of money due the latter. It was proper to order the fund paid into court by the respondent distributed in accordance with the finding of the jury, but no personal judgment for that amount should have been entered against him. We have, accordingly, given direction that a judgment be entered, by which the respondent will be relieved of all liability save that as to costs as above indicated.

2. By cross-bill of exceptions, the movant assigns error upon the overruling of his motion to dismiss the counter-petition filed by the respondent. Whatever merit the grounds upon which this motion was based may have had, we are satisfied that the refusal of the judge to grant it affords Freeman no just cause of complaint. The defense thus allowed to be interposed resulted in no injury to the movant; for the jury, in passing thereon, found in his favor. Indeed, so far as appears, he has been awarded the full amount to which he is entitled, the jury having returned a finding as to the sum for which the respondent was liable to account, and no complaint of their verdict being made.

3. The proposition stated in the third headnote is axiomatic. Consistency is not only becoming, but, under circumstances like those to which we now refer, indispensable.

*Judgment on main bill of exceptions reversed, with direction. Judgment on cross-bill affirmed. All the Justices concurring, except Cobb, J., absent.*