258 P.2d 760

**SHOEMAKER v. SNOW CROP MARKETERS DIVISION OF CLINTON FOODS, Inc. et al.**

No. 7969.

Supreme Court of Idaho.

June 16, 1953.

Keeton, J., dissented.

Clements & Clements, Lewiston, for appellant.

Leslie T. McCarthy, Lewiston, for respondent.

GIVENS, Justice.

The Mark Means Company and Snow Crop Marketers Division of Clinton Foods, Inc., carried on their respective and separate businesses in adjoining buildings in Lewiston. The latter Company processed and sold food.

The employees of one or the other Company, when not employed by their main employer, worked for the other. Claimant was employed regularly as warehouse foreman by the Means Company. July 6, 1952 was a rush period for the Snow Crop Company and the Means Company not being open on that day, claimant was employed by the Snow Crop Company on the tray line and his period of payment included half an hour for lunch at noon.

Claimant had a key to the Means warehouse wherein he had left his lunch pail. He loaned this key with a key to his truck (both on the same key ring) to a Mr. Storey, who desired to use the truck for purposes of his own.

Mr. Taylor, foreman or supervisor of the freezing, casing, storage warehouse and shipping and receiving for the Snow Crop Company, thus testified as to claimant's activities at the time of the accident:

"A. * * *, in rush periods we staggered the line back and forth, (for the lunch hour) whenever there was a possible break in the production line of peas and we can let them go for a few minutes.

* * * * * *

"Q. And during that few minutes, these employees of yours could go where they wanted to get their lunch and the idea was to get back as soon as they could? A. Yes.

* * * * * *

"Q. You were just interested in when they could get back? A. Yes.

* * * * * *

"A. We didn't have regular twenty-minute lunch periods. We have a half hour or an hour, or possibly forty-five minutes,— anything less than half an hour is paid by the company.

* * * * * *

"Q. From the time he (claimant) left there until he came back he was on no company business? A. Other than eating.

* * * * * *

"A. Well we needed his work and we try to see that they do have food so that they are able to do the work."

Claimant testified Mr. Taylor told him to go to lunch between 12:45 and one o'clock and that he intended to be gone—"Long enough to grab my sandwich in the lunch bucket and candy bar and go back." He was given no order by Snow Crop other than to get his lunch and get back to work as soon as he could.

Mr. Storey had not returned the key ring and claimant, in order to enter the warehouse and get his lunch as quickly as possible, climbed up on the roof of the Means Company warehouse and through a window to an elevator shaft and was proceeding hand over hand on a board across the elevator shaft when the board gave way and he fell about twenty feet to the bottom of the shaft, severely injuring himself.

The connection of the Means Company with the controversy is no longer involved and it has been dismissed from the action. The sole contention is between claimant and the Snow Crop Company and its Surety.

Claimant sought, and the Board granted him, compensation on the theory and finding the accident arose out of and in the course of his employment.

Appellant contends that claimant was, during his lunch period, not in the employ of the Snow Crop Company and the accident had no connection whatever with his employment and challenges several of the findings of the Board. Only two are essential: that claimant was under the direction of the Snow Crop Company on his way to lunch and was actually receiving wages from the Company during the lunch period and that the accident arose out of and in the course of his employment by the Company, with consequent liability of it and its surety.

In Western Pipe & Steel Co. of Cal. v. Industrial Accident Comm., 49 Cal.App.2d

108, 121 P.2d 35, at page 38, the Court considered a situation comparable to that herein and held as follows:

"* * *. When the employer pays the employee at an hourly rate during his meal hours, especially when those meals are taken during an overtime period, it seems to be, and is a reasonable inference, that by such an arrangement the employer has impliedly agreed that service will continue during such period.

"This is not a new or novel concept. The problem has frequently been presented in connection with cases where the employee's compensation covers the time he is going to or coming from work. In such situations the courts have quite uniformly held that injuries received while going to or from work are compensable. The problem is discussed in an annotation appearing in 87 A.L.R. 250 entitled: 'Right to compensation for injury while going to or from work as affected by fact that compensation covers the time involved or cost of transportation, or both.' It is there stated:

"'It is a general though not invariable rule, so common as to require no citation of authority, that an injury sustained in going to or from work does not arise out of and in the course of the employment within the meaning of workmen's compensation acts.

"'An exception to this rule, however, is generally recognized where the employee's compensation covers the time involved in going to or from his work, or an allowance is made for the cost of transportation.'

"Many cases are then discussed. Running through the cases is the thought that by agreeing to pay the employee from the time he leaves home until the time he returns, the employer has agreed that the employment shall be continuous during such period. The courts frequently emphasize that such rule has special application to cases where the employee is required to work extra hours. This thought was expressed by the United States Supreme Court in Voehl v. Indemnity Ins. Co., 288 U.S. 162, at page 169, 53 S.Ct. 380, 383, 77 L.Ed. 676, 87 A.L.R. 245, in the following language: 'While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere. Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. An agreement to that effect may be either express or be shown by the course of business. In such case the

hazards of the journey may properly be regarded as hazards of the service, and hence within the purview of the Compensation Act.' "

This theory was followed further in Breland v. Traylor Engineering & Mfg. Co., 52 Cal.App.2d 415, 126 P.2d 455, and Bethlehem Steel Co. v. Industrial Accident Comm., 70 Cal.App.2d 382, 161 P.2d 59.

The Supreme Court of California expressly approved these holdings and the supporting proposition in California Casualty Indemnity Exchange v. Industrial Acc. Comm., 21 Cal.2d 751, 135 P.2d 158, and Kobe v. Industrial Accident Comm., 35 Cal.2d 33, 215 P.2d 736.

Our own Court has recognized, to some extent, the force and effect of the pay period as bringing a case within the orbit of employment and making the accident compensable, Colson v. Steele, 73 Idaho 348, 252 P.2d 1049, 1050, thus:

"* * *. After the expiration of the lunch period appellant's time belonged to and was being paid for by respondent, Steele. * * *"

Herein, the employee was paid throughout the lunch period.

Appellant cites in support of its contention, Taylor v. Binswanger & Co., 130 Va. 545, 107 S.E. 649. Therein compensation was denied a messenger boy injured on a street when going home during the noon hour for his lunch. The accident occurred during a pay period, but the employer had not directed him to hurry back. Therefore, it is distinguishable as the accident therein did not arise out of his employment. This distinction was clearly recognized in Honaker v. Feeney & Hartley, 140 Va. 1, 124 S.E. 220, at page 231, construing the Taylor case. So in Dreyfus & Co. v. Meade, 142 Va. 567, 129 S.E. 336. The Taylor case was followed because no special occasion or instruction incidental to and in furtherance of the employment was present—the employee merely was going for his lunch.

Pillen v. Workmen's Comp. Board, 60 N. D. 465, 235 N.W. 354, applied the Taylor case, and incidentally Walker v. Hyde, 43 Idaho 625, 253 P. 1104, because therein likewise no special incident of employment was connected with the procurement of his lunch.

Staats v. Town of Vienna, 167 Va. 37, 187 S.E. 485, followed the Taylor case because, though the accident was during the lunch hour, it was not in a pay period.

Taylor v. Robertson Chevrolet Co., 177 Va. 289, 13 S.E.2d 326, at page 330, rejected the Taylor v. Binswanger case, supra, as not applicable on the same incident considered controlling herein, thus:

"On the day of his accident Taylor's duties kept him down town until the time for him to report at the warehouse was about at hand. In order for him to comply with this second assignment an early supper was necessary that he might hurry on. We have a simple

case in which he was required by the defendant to go from one assignment to another. He had to eat somewhere, and his rights are not affected by the fact that he ate at home instead of in a restaurant. The detour to his home was too slight to be of moment."

In Southern Surety Co. v. Galloway, 89 Okl. 45, 213 P. 850, cited by appellant, the employee about 11:00 a. m. left his plow, being used in grading a street, walked across the street to get bread from a bread wagon and was struck and injured by an automobile. The Court held the accident did not arise out of the employment. Nothing was said in the opinion as to whether the accident occurred during the employee's pay period nor as to being told to hasten back.

In Sapulpa Refining Co. v. State Indus. Comm., 91 Okl. 53, 215 P. 933, the Court expressly distinguished the above case and did not follow it because the employee, at the time of the accident though off the employer's premises, was on Company time from when he left home until his return; thus recognizing the pertinency and potency of the pay period.

The latest expression of the Oklahoma Court we have found, City Bus Co. v. Lockhart, 204 Okl. 314, 229 P.2d 586, at page 588, distinguishes many cases and among others, In re Gardner, 247 Mass. 308, 142 N. E. 32, 32 A.L.R. 804; 51 A.L.R. 513, 526, cited by appellant; and definitely holds in line with our conclusion herein.

In D'Amico v. Conguista, 24 Wash.2d 674, 167 P.2d 157, wherein Southern Surety Co. v. Galloway, supra, was relied upon in the dissent, the majority recognized the pay period as controlling by referring to Young v. Dept. of Labor & Industries, 200 Wash. 138, 93 P.2d 337, at page 340, 123 A.L.R. 1171, wherein the Court stated:

"Consulting the cases from other jurisdictions, we find many instances in which employees have been injured during meal hours when they were not actually at work. The general rule in such cases is that the injury is compensable if the employee was at the time doing something incidental to the duties for which he was engaged, but is not compensable if the injury resulted from an independent act of the employee having no connection with his work or his meal."

Clark v. Vorhees, 231 N.Y. 14, 131 N.E. 553, relied upon by appellant, denied compensation because the employee was merely going to get a cup of coffee and was under no admonition from his employer as to a speedy return.

Johnson v. Smith, 263 N.Y. 10, 188 N.E. 140, citing the Clark case, inferentially recognizes the distinction we make herein. Furthermore, the favoring factor relied on herein was expressly followed in Bollard v. Engel, 254 App.Div. 162, 4 N.Y.S.2d 363, affirmed in 278 N.Y. 463, 17 N.E.2d 130, citing as supporting modern authorities numerous cases at page 365. The employee

therein was killed when *hurrying* (emphasis ours) to get his meal and quickly return to his employment.

In re Haggard's case, 234 Mass. 330, 125 N.E. 565, 32 A.L.R. note 810, cited by appellant, involved no factor of special activity to comply with the employer's request or order, as is likewise true of In re Gardner, 142 N. E. 32, supra.

Though Massachusetts has followed both the Haggard and Gardner cases, two notable exceptions weaken their effect as militating against recovery herein. In Anderson v. Meyer, 338 Ill.App. 414, 87 N.E.2d 787, at page 792, there was no factual connection between employee's activity and the employment. He merely was mailing his own letter. In Mannix's Case, 264 Mass. 584, 163 N.E. 171, though the accident occurred off the employer's premises, the employee's hurrying to accommodate and further the employer's business was recognized as an exception to and not governed by the Gardner case and compensation was awarded.

In re Haggard, supra, is further rationally distinguished in Gallienne v. Becker Bros. Shoe Co., 88 N.H. 375, 190 A. 274, at page 278, and the latest Massachusetts case encompassing the situation here distinguishes the Haggard case and noted most of the previous Massachusetts cases.

"The mere fact that the performance of duties, which resulted in injury to the employee occurred before or after regular working hours or during a lunch period would not bar him from compensation if his claim was otherwise compensable. (Cases.) Indeed, compensation for an injury which arose out of the actual performance of his work but outside the usual hours could hardly be denied in this Commonwealth where it is well established that an employee is entitled to compensation for an injury sustained outside the regular hours even if at the time of his injury he was engaged in something which was only incidental to his employment. (Cases.)" Chapman's Case, 321 Mass. 705, 75 N.E.2d 433, at page 437.

In re Gardner, supra, has generally been considered by the Courts in Massachusetts as authority only in connection with street-risk cases and not as applicable to lunch hour pay-period cases where the activities were in response to some direction or admonition on the part of the employer. Doyle's Case, 256 Mass. 290, 152 N.E. 340; Colarullo's Case, 258 Mass. 521, 155 N.E. 425, 51 A.L.R. 508; Higgins' Case, 284 Mass. 345, 187 N.E. 592.

Tinsman Mfg. Co. v. Sparks, 211 Ark. 554, 201 S.W.2d 573, at page 574, is an enlightening and explorative case analyzing and considering most of the divergent cases on the essential factors herein relied upon and the conclusions therein are comprehensively compelling:

"* * *. It is the concurrence of these two decisive facts that distinguish

the case at bar from the cases relied on by the appellant. These facts are: Not only was Sparks 'on company time,' but the appellant (acting through its woods superintendent) had all the time, and with full knowledge, permitted Sparks and other employees to stop the bus and make individual purchases. In so doing, the employer permitted Sparks and the other employees to pursue a course of procedure that cannot be held to be such a deviation from the employment, as to remove Sparks from the protection of the Workmen's Compensation Law. In other words, whatever deviation there might have been, was too slight to release the appellants from the coverage afforded Sparks as an employee."

The latest annotation on this subject which we have found is 141 A.L.R. 862, following Desautel v. North Dakota Workmen's Comp. Bureau, 72 N.D. 35, 4 N.W.2d 581, and in the main tends to sustain the conclusion herein. Other previous annotations are noted in the cases above referred to.

It will be noticed that in Wetzel v. Britton, 83 U.S.App.D.C. 327, 170 F.2d 285, it was not shown the employee was paid for the lunch period.

■ A careful analysis and consideration of all the above authorities lead to the conclusion the Board was justified in considering the accident herein arose in the course of the employment, because it was within the period for which claimant was receiving pay, and that it arose out of his employment because he was hurrying to get his lunch and return at the direction of the employer, thus engaged in doing in the manner, though not the specific act, as directed by and for the benefit of the employer.

■ Conceding the employee was negligent or engaged in a hazardous undertaking in crossing hand over hand on the board which gave way, there was no contention and no evidence that he wilfully intended to injure himself, under Section 72–202, I.C. Therefore, negligence does not deprive him of the right to compensation. Olson v. Union P. R. R. Co., 62 Idaho 423, at page 428, 112 P.2d 1005; Anderson v. Woesner, 66 Idaho 441, at page 447, 159 P.2d 899. Though not of particular significance, it is to be noted claimant had pursued this method of ingress before and there is no contradiction of the fact, testified to by both claimant and employer and as found by the Board, that the rush period of work of the employer was understood by both the claimant and the employer to necessitate hurrying to get through with his lunch and return to the tray line. This quotation from In re Stewart, 49 Idaho 557, 290 P. 209, 210, is poignantly apropos:

"* * *. Part of the res gestae were Stewart's last words: 'I was just trying so hard to do something.' Louder than this attestation of his dying lips were his actions undertaken in the im-

mediate vicinity of the work going on: surely his efforts were directed to but one objective, that of contributing some measure of service to his employer's business. Conceding that he exercised defective, even reckless, judgment, that could not deprive his endeavor of its primary purpose. * * *"

The award is affirmed. Costs awarded to respondent.

PORTER, C. J., and TAYLOR and THOMAS, JJ., concur.

KEETON, J., dissents.