430 P.2d 677

**In the Matter of the Death of Glen V. SOUTH.**

**Edna SOUTH, Claimant-Appellant,**

v.

**BONNER COUNTY SCHOOL DISTRICT NO. 82, Employer, and State Insurance Fund, Surety, Defendants-Respondents.**

No. 9891.

Supreme Court of Idaho.

July 20, 1967.

Rehearing Denied Sept. 7, 1967.

———◆———

Stephen Bistline, Sandpoint, for appellant.

Coughlan & Imhoff, Boise, for respondents.

McQUADE, Justice.

Appellant's husband was fatally injured in an automobile accident while driving to his place of employment. Contending that the death was compensable under the Workmen's Compensation Law of this state, appellant filed a petition for a hearing on her claim for compensation before the Industrial Accident Board in a proceeding against her husband's employer, respondent Bonner County, Idaho, School District No. 82 and its surety, respondent State Insurance Fund. After a hearing, the Board found that appellant had failed to establish that the accident had arisen "out of and in the course and scope of his [appellant's husband's] employment," and entered an order denying appellant's claim. This is an appeal from that order.

The record discloses that appellant's husband was employed by respondent school district as head custodian and janitor at the district's senior high school on Division Street near Sandpoint, Idaho. When school was in session, his normal, required, work schedule each weekday was a split shift: from sometime prior to 8:00 a. m. to 12 noon; and from sometime after 4:00 p. m. till early evening, perhaps 8:00 p. m. While driving towards the high school to begin his afternoon shift on January 25, 1965, appellant's husband was fatally injured when his automobile was struck by a large truck at the diagonal intersection of Highway 2 and Division Street at Sandpoint. The accident occurred at a point about one-sixth of a mile southerly from the high school, while he was attempting to turn off the highway onto the easterly lane of Division Street, the street on which he ordinarily drove to the school.

Appellant's husband had been head custodian at the high school since its construction, seven years before his fatal accident. Besides doing routine maintenance work, he supervised two assistant janitors. "He grew up with the building," the school's principal testified at the Board hearing, and "he understood [its] every creak and groan," and so was the employee most familiar and capable concerning the school building's more intricate machinery. It appears that sometimes appellant's husband was called to the school building outside his customary working hours to do odd, unanticipated jobs, and that sometimes on his own initiative he inspected the building during his off-hours. These extra visits notwithstanding, the Board found, "in the main, his hours were generally set at 8:00 a. m. until noon, and from 4:00 p. m. until 8:00 p. m. of the same day."

Appellant and her husband lived at Dover, three miles from the school, and this fact was known by its principal who also knew that the easterly lane of Division Street was the only practical route for

the last part of a drive between Dover and the school. Appellant's husband had neither asked nor received compensation for travel, but at the hearing appellant's attorney attempted to interrogate respondent school district's business manager regarding whether appellant's husband "was entitled to be paid compensation mileage," "under the rules and regulations of the school." Upon objection by respondents' attorney, the Board refused to permit this line of questioning. Appellant's attorney then entered the following offer of proof:

> "if this witness were allowed to answer this question this witness would answer that under this working arrangement, under the rules and regulations of the school, of which he is the Business Manager, the decedent, Mr. South, was entitled to be · paid compensation mileage for the use of his automobile— is the offer of proof."

The Board sustained an objection by respondents' attorney and rejected the offer.

Appellant's attorney then asked the same witness if he, the witness, had known that appellant's husband "was not being paid any compensation for this split shift mileage?" The Board sustained an objection that it was "irrelevant and immaterial," and appellant's attorney made the following offer of proof:

> "that the witness would explain that it had not been called to his attention; that it was an oversight, apparently, and had it been called to his attention that Mr. South would have been paid his mileage compensation by reason of being entitled to it."

This offer also was rejected upon objection by respondent's attorney.

Appellant assigns as error the Board's rulings which rejected the above mentioned offers of proof and the Board's conclusion that her husband's death was not compensable since it did not arise out of and in the course of his employment within the meaning of I.C. § 72–201.

■ Proof that respondent school district was required to compensate appellant's husband for his trips from home to the school before his ordinary afternoon shifts, would be some evidence that the district regarded this customary travel as part of the job as head custodian, and the Board properly might take it into account when determining whether his death arose out of and in the course of his employment. See Martin K. Eby Constr. Co. v. Indus. Com'm., 151 Colo. 320, 377 P.2d 745 (1963); 8 Schneider, Workmen's Compensation Text § 1744 (1951); 1 Larson, Workmen's Compensation § 16.20 (1965); see also State Dept. of Highways v. Johns, Alaska, 422 P.2d 855, 860–861 (1967). However, the offers quoted above were to present, orally, conclusions of the witness, himself an employee of respondent school district, concerning the intendment of a written rule or regulation of the district; the documents themselves were not offered. It is obvious from the terms of the second offer that during his employment appellant's husband's travel expenses had not been considered by the district's trustees or the witness [business manager]. The offers do not indicate clearly whether the subject of inquiry was the contents of a particular rule or regulation, or an extemporaneous general opinion of the witness.

■ An offer of proof must state specifically what the offerer seeks to establish and must show clearly that the evidence offered is competent and otherwise admissible. Koser v. Hornback and Morgan, 75 Idaho 24, 265 P.2d 988, 44 A.L.R.2d 1015 (1954); Boise Ass'n of Credit Men v. United States Fire Ins. Co. et al., 44 Idaho 249, 256 P. 523 (1927); cf. Bressan v. Herrick, 35 Idaho 217, 205 P. 555 (1922). The Board did not commit reversible error by rejecting appellant's offers of proof.

Appellant contends further that even without a finding that her husband was entitled to travel expense compensation from respondent school district for the

trip which ended in his fatal accident, the evidence before the Board compelled the conclusion that her husband's accident and death arose out of and in the course of his employment.

When an employee is injured while driving to work in his own automobile, "there is a general presumption that his injury did not arise out of and in the course of [his] employment" within the meaning of I.C. § 72–201. In Re Croxen, 69 Idaho 391, 207 P.2d 537 (1949); see 1 Larson, Workmen's Compensation § 15.11 (1966); 8 Schneider, Workmen's Compensation Text § 1710 (3d or perm. ed. 1951); cf. In Re Malmquist, 78 Idaho 117, 300 P.2d 820 (1956); Eriksen v. Nez Perce County, 72 Idaho 1, 235 P.2d 736 (1951); Walker v. Hyde, 43 Idaho 625, 253 P. 1104 (1927); cf., Foust v. Birds Eye Div. of Gen. Foods Corp., 91 Idaho 418, 422 P.2d 616 (1967); Stover v. Washington Co., 63 Idaho 145, 118 P.2d 63 (1941). Appellant recognizes this rule, but contends that the circumstances of the present action bring it within two separate exceptions, those of "peculiar risk," and "travel-as-part-of-employment." Concerning peculiar risks, appellant claims that the ordinary and only practical route from her and her husband's home to the school was hazardous, as was known by her husband's employer, particularly at the intersection where the fatal accident occurred, and that the hazards became annexed to her husband's employment; regarding travel-as-employment, she contends that her husband's trip to the school on the afternoon of the accident was "a part of the service which he rendered to his employer," so that his employment should be deemed to have begun at the trip's inception.

In Jaynes v. Potlatch Forests, Inc., 75 Idaho 297, 271 P.2d 1016, 50 A.L.R.2d 356 (1954), this Court recognized and applied the "peculiar risk" doctrine as an exception to the general rule that injuries sustained off-premises are not compensable. In *Jaynes,* the Industrial Accident Board, on grounds that an employee's

death had not arisen out of and in the course of his employment, had denied workmen's compensation to his widow. The employee had died from injuries received in an accident which occurred immediately after he had left work, when a train struck his automobile at a railroad crossing adjacent to his employer's premises. Reversing the Board's order, this Court "extend[ed] * * * the course of employment beyond the premises of the employer * * * to the necessary risks and hazards associated with the employment." Jaynes v. Potlatch Forests, Inc., supra at 303, 271 P.2d at 1019. In the paragraph immediately following that just partially quoted, the Court carefully limited the *Jaynes* holding:

"By the extension of the off-premises rule it is not intended to cover all possible accidents but only instances where there is a very real and special danger —to reach out and cover that danger; hence the reason for such extension is only to encompass, as in this instance, a hazardous railroad crossing, and not to expand the course of employment for every conceivable purpose * * *." Ibid.

Examining the record in the present action, we find no "peculiar risk" sufficient to bring appellant's husband's fatal accident and death within the rule of the *Jaynes'* case. Appellant stresses that the customary route from home to school forced her husband to make a left turn off the highway onto Division Street at the point of his accident, citing in support Greydanus v. Industrial Accident Commission, 63 Cal.2d 490, 47 Cal.Rptr. 384, 407 P.2d 296 (1965). In *Greydanus,* which of course is not controlling authority, the Court upheld an Industrial Accident Commission's finding that the employee's injuries arose out of and in the course of employment when his auto was struck from behind by a passing vehicle as he attempted to turn left off a highway onto his employer's driveway. At the time of impact, his auto's wheels were a few feet short

of the driveway's apron, and the commission had expressly found that upon the completion of this turn (at a point in the highway which was not within a regular intersection), the employee had entered the " 'necessary means of access to the employer's premises.' " Greydanus v. Industrial Accident Commission, supra at 386, 407 P.2d at 298. The facts of the *Greydanus* case are clearly distinguishable from those of the present proceeding.

Appellant argues that other hazards were presented by the route which her husband customarily drove to the school, for example that the road was icy and the sidewalks packed high with snow at spots, but this record does not suggest that these conditions presented any special dangers which contributed to the accident.

Appellant's argument that the trip which ended in her husband's fatal accident was part of his employment or a substantial part of the service for which he was compensated, must likewise be rejected. Appellant's husband at the time of the accident was not going to the school in response to a special, off-hours' demand for his services, see Schreifer v. Industrial Accident Commission, 61 Cal.2d 289, 38 Cal. Rptr. 352, 391 P.2d 832 (1964); 1 Larson, Workmen's Compensation § 16.12 (1966); 8 Schneider, Workmen's Compensation Text §§ 1732–1735 (1951); cf. Shoemaker v. Snow Crop Marketers Div. of Clinton Foods, 74 Idaho 151, 258 P.2d 760 (1953), but rather was en route to begin the second part of his everyday work schedule. The mere fact that he had to travel three miles each way going and coming to work twice every weekday, a total distance of twelve miles a day, does not establish that his ordinary trips to and from work were a substantial part of his employment. The convenience which he rendered respondent school district by driving to the school twice each weekday was not materially different from that afforded an employer by the ordinary employee who transports himself to work, and, as stated, the general rule is that an employee's injury is not compensable by the employer if sustained on such a journey. In Re Croxen, supra.

Shoemaker v. Snow Crop Marketers Div. of Clinton Foods, supra, is not in point. In *Shoemaker,* this Court affirmed the Board's award to an employee who had been injured while on his way to lunch on the employer's premises. The employee was receiving wages for his lunch period and was injured as a direct result of his attempt to eat quickly in response to his employer's request that he return to work as soon as possible.

The Board's findings of fact and order in the present proceeding, being based on substantial, competent evidence, are affirmed, I.C. § 72–609(a); Bennett v. Bunker Hill Co., 88 Idaho 300, 399 P.2d 270 (1966).

Order affirmed.

SMITH, McFADDEN and SPEAR, JJ., and DONALDSON, D. J., concur.