(No. 50620.—

LYNCH SPECIAL SERVICES, Appellant, v. THE INDUS-
TRIAL COMMISSION *et al.*—(Leo Shells, Appellee.)

*Opinion filed March 20, 1979.—Rehearing denied May 30, 1979.*

Jay M. Shapiro and Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Miles N. Beermann, of counsel), for appellant.

Chester L. Blair, Chartered, of Chicago (Gilbert C. Schumm, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

An Industrial Commission arbitrator awarded claimant Leo Shells $117.40 per week for a 10-week period of temporary total incapacity for work and the further sum of $91.80 per week for 58 3/4 weeks as compensation for a 25% permanent and complete loss of use of the left arm found to have resulted from an industrial accident on January 5, 1975. (Ill. Rev. Stat. 1973, ch. 48, par. 138 *et seq.*) Both claimant and the employer, Lynch Special Services (Lynch), sought review by the Commission which

affirmed the award for temporary total incapacity and enlarged the award for loss of use of the left arm to 40%. Respondent employer sought *certiorari* from the circuit court of Cook County, which confirmed the Commission award. The case is before us pursuant to our Rule 302(a). 58 Ill. 2d R. 302(a).

Claimant, who was employed by Lynch as a security guard, had been assigned to a vacant warehouse situated at 2222 South Calumet in Chicago for some three weeks at the time the accident occurred. He worked the 7 a.m. to 3:30 p.m. shift. The guard on duty was ordinarily alone in the warehouse. Clarence Sadler, Lynch's "Captain of the Guard," testified that when security guards were hired, their duties and the company rules were explained to them, including the rule prohibiting guards from leaving their posts during their tours of duty. He stated that "Every building has a different set of rules" and "The rules of the building are posted." He also testified that a copy of the building rules was in the guard's desk drawer although admitting he had not seen it there. Claimant's duties involved making "hours rounds," during which he punched clocks located at various spots in the warehouse. The witness also testified that there was a hot plate and coffee pot at claimant's "station" near the warehouse door, and that claimant was free to drink coffee "all day" at his station if he wanted to but could not leave the building to do so; that guards were not relieved for coffee or lunch breaks, and that they brought their lunches and ate them at their posts at whatever time they chose. The witness stated he had not examined the coffee pot or tested the hot plate; he also testified that he had not personally hired or instructed claimant, who was an "old employee" with six or eight years' experience whose hiring preceded the witness' employment with Lynch.

Claimant testified that he had worked for Lynch about nine years. On the day of the accident he arrived at

the warehouse about 6:45 a.m. and left about 7:50 to go to a nearby restaurant for a cup of coffee and a donut, which he said was his breakfast. Six or seven minutes later, while walking back carrying the coffee and donut, he slipped and fell on the icy sidewalk, breaking his left arm. The restaurant, claimant stated, was on Prairie Street about a block and a half from the warehouse. Claimant further testified that on his first day at the warehouse a fellow employee, whose first name was Felix but whose surname was unknown to claimant, and who was a sergeant of the guard, told him what his duties were. When asked "What if you don't bring your lunch," claimant testified that Felix told him, "You can always go to the restaurant and pick up a cup of coffee or roll or sandwich, whatever you want and come straight back." Felix did not testify. Claimant also testified that Captain Sadler had told him he could leave the warehouse to get coffee. This was denied by Sadler, who testified that he had terminated claimant's employment with Lynch because of the violation of the rule against leaving his post. Claimant stated nine months later at the hearing, "I don't know whether I'm fired or not," although he hadn't tried to go back to work when told by his doctor to do so in May. Claimant commenced receiving unemployment compensation payments in July.

It is fundamental in our workmen's compensation law that only injuries "arising out of" and "in the course of" employment are compensable. (Ill. Rev. Stat. 1975, ch. 48, par. 138.2.)

> "The phrases 'arise out of' and 'in the course of' are used conjunctively, thus requiring the existence of both elements to make the Workmen's Compensation Act applicable. The phrase 'in the course of' relates to the time, place and circumstances of the injury, while the phrase 'arising out of' refers to the requisite causal connection

between the injury and the employment." (*Fire King Oil Co. v. Industrial Com.* (1976), 62 Ill. 2d 293, 294.)

Those phrases were discussed at greater length in *Chmelik v. Vana* (1964), 31 Ill. 2d 272, 277-78, cited by both parties, where the court said:

"The words 'arising out of' refer to the origin or cause of the accident and presuppose a causal connection between the employment and the accidental injury [citations], and in order for an injury to come within the act it must have had its origin in some risk connected with, or incidental to, the employment, so that there is a causal connection between the employment and the injury. [Citations.] The injury need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence. [Citation.] Ordinarily, an injury does not arise out of the employment unless the danger causing the injury is peculiar to the work and the risk is not one to which the public generally is subjected [citation]; however, if an employee is exposed to a risk common to the general public to a greater degree than other persons by reason of his employment, the accidental injury is said to arise out of his employment. [Citations.]

The words 'in the course of the employment,' on the other hand, refer to time, place and circumstances under which the accident occurred [citations], and it is stated generally that an accidental injury is received in the course of the employment when it occurs within the period of employment at a place where the employee may reasonably be in the performance of his duties,

and while he is fulfilling those duties or engaged in something incidental thereto. [Citations.] "

While these principles of workmen's compensation law determine the compensability of injuries, there is considerably greater uniformity in their statement than in their application. To the limited extent that generalities are appropriate, it can fairly be said that lunchtime injuries suffered away from the employer's premises by employees with fixed hours and place of employment and unpaid lunches, and who are not engaged in employer errand running or other employment-related activity, are not compensable. Again in a general way, such injuries can be characterized as governed by the rules applicable to injuries suffered while going to or from work. (1 A. Larson, Workmen's Compensation sec. 15.51 (1978).) Conversely, an employee injured while going to or from or during, paid or unpaid lunches on the employer's premises will usually be compensated. (1A A. Larson, Workmen's Compensation sec. 21.21(a) (1979).) Within the broad area between these two extremes are many differing factual situations with varied judicial holdings.

For the purpose of resolving this case, claimant's trip to the restaurant must be viewed as having been made with the employer's consent, and we need not be concerned about deviations from the terms of employment. Claimant testified that sergeant of the guard Felix, his immediate superior, had told him he could get coffee, donuts or anything he wanted from the restaurant and that Captain Sadler told him the same thing. Although the latter denied this conversation, claimant's testimony regarding his conversation with Felix was not denied, and the arbitrator and the Commission apparently accepted it. We cannot say their action in doing so was contrary to the manifest weight of the evidence. *County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 19; *Warren v. Industrial Com.* (1975), 61 Ill. 2d 373, 376; *Rysdon Products Co. v.*

*Industrial Com.* (1966), 34 Ill. 2d 326, 330.

The question we must answer, then, is whether a Commission award to an employee injured in a fall on an icy sidewalk while returning from a permissive trip to a restaurant for coffee and a donut is contrary to the manifest weight of the evidence. In a somewhat similar case, *Schwartz v. Industrial Com.* (1942), 379 Ill. 139, this court denied compensation. There the deceased employee was manager or assistant manager of a store which on Saturdays remained open until midnight. Decedent was on continuous duty from its opening to closing. No food or place to eat it was provided by the employer, but the employees were at liberty to go out for meals when and where they chose. When decedent went out for a meal he always left word where he could be reached if his presence at the store was required. On the Saturday afternoon in question his fiancee joined him at the store and they proceeded to a nearby restaurant after decedent informed another employee where he would be. After eating his meal decedent returned to the store. He subsequently died of food poisoning resulting from the restaurant food. This court held the death occurred in the course of employment since the contaminated food was ingested at a time when decedent's employment was not "suspended or discontinued." (379 Ill. 139, 146.) However, the court held the death did not arise out of the employment because of the absence of any causal relationship between the employment and the injury, and the necessity that the causative danger be peculiar to the work and not common to the neighborhood.

> "Partaking of contaminated food in a nearby restaurant cannot be said to have any causal relation to the employment of the deceased in the retail store of plaintiff in error. The causative danger—the contaminated food—was not peculiar to the work or incidental to the employment

because it did not belong to, nor was it in any way connected with, what the deceased had to do in fulfilling his contract of service. The origin or cause of the accident did not belong to and was not connected with the duties of the deceased under his contract of service." (379 Ill. 139, 147.) (See also *Pearce v. Industrial Com.* (1921), 299 Ill. 161.) A divided Supreme Court of Alabama reached a similar result in *In re Union Camp Corp. v. Blackmon* (1972), 289 Ala. 635, 270 So. 2d 108, and representative cases from various jurisdictions in which compensation was denied are collected by Professor Larson in volume 1, section 15.51, footnote 70.

Contrary to the result reached by this court in *Schwartz,* some courts have affirmed the award of compensation to employees suffering off-premises injuries during lunch hours or coffee breaks where the employee is paid for the time so spent. Notable among these are the California cases *Rankin v. Workmen's Compensation Appeals Board* (1971), 17 Cal. App. 3d 857, 95 Cal. Rptr. 275, and cases there cited, and *Western Greyhound Lines v. Industrial Accident Com.* (1964), 225 Cal. App. 2d 517, 37 Cal. Rptr. 580. The fact that the employee was paid during the lunch or coffee break was there thought sufficient to render compensable any injury from reasonable causes during those periods. The refreshing effect of the food or drink consumed during those periods is viewed by some courts as enhancing the personal comfort, health and efficiency of the employee, thus also benefiting the employer. A number of cases emphasizing this factor are cited in Mr. Chief Justice Heflin's dissent in *Union Camp.* Other cases, some of which are summarized in the court's opinion in *Shoemaker v. Snow Crop Marketers Division of Clinton Foods, Inc.* (1953), 74 Idaho 151, 258 P.2d 760, emphasize the shortness of the lunch or coffee period and the employer's direction, if present, to "hurry back" as

significant factors. The personal comfort doctrine is discussed by Professor Larson in volume 1A, section 21, and the "coffee break" cases at volume 1, section 15.54. He believes the guiding principle in these categories should be whether "the employer, in all the circumstances, including duration, shortness of the off-premises distance, and limitations on off-premises activity during the intervals can be deemed to have retained authority over the employee ***." (See 1 A. Larson, Workmen's Compensation sec. 15.54 (1978).) If so, the injury ought to be compensable.

We believe the circumstances here fall short of compensability. The factors of employer-furnished transportation (*American Hardware Mutual Insurance Co. v. Burt* (1961), 103 Ga. 811, 120 S.E.2d 797) or food facilities (*Jewel Companies, Inc. v. Industrial Com.* (1974), 57 Ill. 2d 38; *Sweet v. Kolosky* (1960), 259 Minn. 253, 106 N.W.2d 908) or food (*Krause v. Swartwood* (1928), 174 Minn. 147, 218 N.W. 555; *Goldberg v. Gold Medal Farms, Inc.* (1963), 18 App. Div. 2d 951, 237 N.Y.S.2d 656) are not present here. Nor was claimant doing any errands for his employer (*Kahn Bros. Co. v. Industrial Com.* (1929), 75 Utah 145, 283 P. 1054) or going to the restaurant at the employer's suggestion or request (*Krause*).

In our judgment, the result here is governed by our earlier decision in *Schwartz*. The only difference in the cases which might be thought to support a different result is that the period of time away from work is shorter here. That fact, alone, is insufficient in our opinion to free this case from the precedential influence of *Schwartz*. Certainly the cause of the injury here—the icy sidewalk upon which claimant fell—was no more a hazard peculiar to claimant's employment than the contaminated food in *Schwartz*.

Claimant, however, relies heavily upon *Torbeck v.*

*Industrial Com.* (1971), 49 Ill. 2d 515, where this court affirmed an award to an employee injured while crossing a public street between the store where she worked and the restaurant from which she intended to bring her supper back to the store. There is, however, a crucial difference between *Torbeck* and this case. In *Torbeck* the employee had not brought her supper because she did not learn until 6:30 p.m. that she would have to work until 9 p.m. instead of 7 p.m. At the time her employer told her of this, the employer specifically directed the employee to get food herself while the employer tended the store and bring it back to the store to be eaten. Because the employee in *Torbeck* had not known when she came to work that day that she would have to work late that evening, she could not be said to have voluntarily chosen to purchase food at the restaurant rather than to bring it with her. Consequently, said the court:

> "The situation thus presented differs from the ordinary case of an injury suffered by an employee during his lunch hour. This claimant's presence in the street at the time of her injury was occasioned by the demands of her employment." *Torbeck v. Industrial Com.* (1971), 49 Ill. 2d 515, 516-17.

In the case before us, even though the Commission believed, as it apparently did, claimant's testimony that his superiors had told him he could go to the restaurant for coffee and food "and come straight back," there is a fundamental difference. In *Torbeck* the employee had no knowledge when she came to work that she would be required to work late so that her employer could play bingo that night. When she learned of it and was told by the employer to get her supper at the restaurant and bring it back to the store while the employer waited, the employee had no choice but to do so or go hungry. Here, however, claimant knew his working hours when he left

home; he could have brought his food and eaten at his station as guards ordinarily did. That he chose instead to go to the restaurant neither benefited nor accommodated his employer. In fact, it left the warehouse unprotected during his absence.

In our judgment claimant's injury cannot be said to have arisen out of and in the course of his employment to any greater extent than can that of the ordinary fall on the ice suffered by an employee who voluntarily elects to go outside his place of employment to purchase or eat his food.

The judgment of the circuit court of Cook County is reversed and the award of compensation vacated.

*Judgment reversed;*
*· award vacated.*