Jeff CHRISTENSEN and Kyle
James Fausett, Plaintiffs
and Appellants,

v.

BURNS INTERNATIONAL SECURITY
SERVICES and Gloria Swenson,
Defendants and Appellees.

No. 920172–CA.

Court of Appeals of Utah.

Dec. 28, 1992.

Lynn C. Harris, Harris, Carter & Harrison, Provo, for appellant–Christensen.

Thomas R. Patton, Aldrich, Nelson, Weight & Esplin, Provo, for appellant–Fausett.

Vicki Rinne (argued), Highland, Mark J. Williams (argued), Hanson, Epperson & Smith, Salt Lake City, Stanley R. Smith, Whooton, Smith & Associates, American Fork, for appellee Burns Sec.

Before BENCH, BILLINGS and ORME, JJ.

OPINION

BILLINGS, Associate Presiding Judge:

Appellants Jeff Christensen (Christensen) and Kyle James Fausett (Fausett) filed a negligence action against Gloria Swenson (Swenson) and her employer, appellee Burns International Security Services (Burns), based on a traffic accident involving Swenson, Christensen and Fausett. Burns filed a motion for summary judgment, claiming Swenson was not acting

within the scope of her employment at the time of the accident and, thus, Burns was not liable under the doctrine of respondeat superior for Swenson's alleged negligence. The trial court granted summary judgment in favor of Burns. Christensen and Fausett appeal.[1] We affirm.

## FACTS

Burns provides security services for the Geneva Steel Plant in Orem, Utah. Burns employed Swenson in June 1988. On July 26, 1988, Swenson was assigned guard duty during the day shift at Gate 4, the northeast entrance to the Geneva property. Shortly after 11:00 a.m., Swenson observed a break in the traffic at Gate 4 and decided to get a cup of soup at the Frontier Cafe. She drove her automobile across the street to the cafe and picked up the soup, intending to eat it at Gate 4. However, on her return trip, she collided with a motorcycle Christensen and Fausett were riding.

Based upon these facts, the trial court granted Burns's motion for summary judgment, concluding Swenson was not acting within the scope of her employment at the time of the accident.

## STANDARD OF REVIEW

Summary judgment is appropriate "when the record indicates 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Jones v. Bountiful City Corp.*, 834 P.2d 556, 558 (Utah App.1992) (quoting *Kitchen v. Cal Gas Co., Inc.*, 821 P.2d 458, 460 (Utah App.1991), *cert. denied sub nom. Kitchen v. England*, 832 P.2d 476 (Utah 1992)); *accord Weese v. Davis County Comm'n*, 834 P.2d 1, 2 (Utah 1992). We examine a trial court's grant of summary judgment for correctness, according "no deference to the trial court's legal

conclusions." *Jones*, 834 P.2d at 558; *accord Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1039–40 (Utah 1991). When reviewing a grant of summary judgment, "we view all relevant facts, including all inferences arising from the facts, in the light most favorable to the party opposing the motion." *Kitchen*, 821 P.2d at 460; *accord Clover*, 808 P.2d at 1039. Should we conclude there is a genuine issue of material fact, "we must reverse the grant of summary judgment and remand for trial on that issue." *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987); *accord Alford v. Utah League of Cities & Towns*, 791 P.2d 201, 204 (Utah App.1990).

The determination "whether an employee is acting within the scope of employment is a question of fact." *Clover*, 808 P.2d at 1040; *accord J.H. v. West Valley City*, 840 P.2d 115, 122 (Utah 1992); *Birkner v. Salt Lake County*, 771 P.2d 1053, 1057 (Utah 1989). Therefore, the trial court must submit the issue to a jury " 'whenever reasonable minds may differ as to whether the [employee] was at a certain time involved wholly or partly in the performance of [the employer's] business or within the scope of employment.' " *Clover*, 808 P.2d at 1040 (quoting *Carter v. Bessey*, 97 Utah 427, 93 P.2d 490, 493 (1939)); *accord Birkner*, 771 P.2d at 1057. However, if the action in question "is so clearly within or without the scope of employment that reasonable minds cannot differ," a trial judge may "decide the issue as a matter of law." *Clover*, 808 P.2d at 1040; *accord J.H.*, 840 P.2d at 123; *Birkner*, 771 P.2d at 1057.

## SCOPE OF EMPLOYMENT

On appeal, Christensen and Fausett claim that because the Frontier Cafe was "an extension of the workplace" for Burns employees, "much like a company cafeteria[2]," Swenson was within the scope of her

---

1. Because the record indicates Swenson filed bankruptcy and was fully discharged in approximately June 1990, she is no longer a party to this action. Therefore, the trial court's award of summary judgment in favor of Burns is a final judgment.

2. For example, occasionally security guards and those on roving patrol duty picked up food from

the cafe for themselves and their co-workers during brief, paid breaks. Menus for the cafe were posted at Swenson's guard station to facilitate quick retrieval of food since the guards had no scheduled breaks and had to eat when there was a pause in traffic at their assigned posts. Burns's management was aware that employees

employment at the time of the collision. Burns responds that Swenson was not within the scope of her employment because the accident took place outside the boundaries of Geneva while Swenson was involved in a "wholly personal endeavor."

An employer is liable for the negligent acts of its employees under the doctrine of respondeat superior only "when the employees are acting within the scope of their employment." *Clover*, 808 P.2d at 1040; *accord Whitehead v. Variable Annuity Life Ins. Co.*, 801 P.2d 934, 935 (Utah 1989). The Utah Supreme Court explained the standards for determining when an employee's actions fall within the scope of employment in *Birkner v. Salt Lake County*, 771 P.2d 1053 (Utah 1989). *Birkner* set out three factors which must be met to find an employee within the scope of employment. First, "an employee's conduct must be of the general kind the employee is employed to perform." *Id.* at 1056–57. To satisfy this factor, "an employee's acts or conduct must be generally directed toward the accomplishment of objectives within the scope of the employee's duties and authority, or reasonably incidental thereto." *Id.* at 1057. Therefore, "the employee must be about the employer's business and the duties assigned by the employer, as opposed to being wholly involved in a personal endeavor." *Id.* Second, "the employee's conduct must occur within the hours of the employee's work and the ordinary spatial boundaries of the employment." *Id.* Third, "the employee's conduct must be motivated, at least in part, by the purpose of serving the employer's interest." *Id.* This factor means that, regardless of whether the employee's intent is "misguided in its means," the purpose "must be to further the employer's business interests." *Id.* An employee who fails to meet any one of the three factors is outside the scope of employment and the employer cannot be held liable under the doctrine of respondeat superior.

The Utah Supreme Court recently applied the *Birkner* test in *Clover v. Snowbird Ski Resort*, 808 P.2d 1037 (Utah 1991). In *Clover*, Snowbird Ski Resort hired a chef to work at its Plaza Restaurant, located at the base of the resort. *See id.* at 1038. However, the chef's duties also included making periodic inspections of Snowbird's Mid–Gad Restaurant, located halfway up the mountain. *See id.* at 1038–39. On the day of the accident, the chef was not scheduled to work at the Plaza Restaurant until 3:00 p.m. and had planned to go skiing before his shift. *See id.* at 1039. However, the restaurant manager requested the chef to inspect the Mid–Gad Restaurant before reporting to work at the Plaza Restaurant. *See id.* In the middle of his first run, the chef stopped and inspected the Mid–Gad Restaurant. *See id.* He then skied four additional runs and rode the lift to the top of the mountain before skiing down to the Plaza Restaurant to begin his shift. *See id.* At a place above the Mid–Gad Restaurant, the chef, ignoring a warning sign, increased his speed and jumped off of a crest. *See id.* He collided with and severely injured the plaintiff who was skiing below the crest. *See id.*

The plaintiff brought suit against the chef and Snowbird, alleging Snowbird was liable for the chef's negligence because the chef was acting within the scope of his employment at the time of the accident. *See id.* The trial court dismissed the plaintiff's claims, finding that, "as a matter of law, [the chef] was not acting within the scope of his employment at the time of the collision." *Id.*

The supreme court reversed and remanded the case for trial, concluding reasonable minds could differ on the issue of scope of employment. *See id.* at 1042–43. Applying the *Birkner* test to the facts, the court first determined that, because Snowbird expected the chef to use its ski lifts and runs to inspect the Mid–Gad Restaurant, the chef's actions could be " 'of the general kind that [he was] employed to perform.' " *Id.* at 1041 (quoting *Birkner*, 771 P.2d at 1057). Next, the court determined there was evidence that the chef's actions occurred within the hours and normal spatial

---

used the cafe for breaks and never disciplined employees for doing so.

boundaries of his employment because his responsibilities included inspecting the Mid–Gad Restaurant while not on duty at the Plaza Restaurant, and his work necessitated using the ski lifts and runs. *See id.* Finally, the court stated the chef's inspection of the Mid–Gad Restaurant, as requested by his employer, may be " 'motivated, at least in part, by the purpose of serving the employer's interest.' " *Id.* (quoting *Birkner*, 771 P.2d at 1057).

■ Applying the *Birkner* test to the present case, we conclude, as did the trial judge, that Swenson's conduct was not within the ordinary spatial boundaries of her employment as a matter of law, and therefore does not satisfy the second *Birkner* factor. Because an employee is outside the scope of employment if one of the three *Birkner* factors is not satisfied, we do not discuss the remaining factors.

The court, in *Clover*, noted that all of the chef's activities took place "on his employer's premises," i.e., within the boundaries of Snowbird Ski Resort. *Clover*, 808 P.2d at 1041. This is simply not true in the case before us. The accident occurred outside the boundaries of Swenson's assigned workplace, the premises of the Geneva Steel Plant. Therefore, reasonable minds could not disagree that Swenson was out of the ordinary spatial boundaries of her employment and, consequently, outside the scope of her employment.

The factual ties connecting Swenson's employment to the Frontier Cafe are not sufficient to bring her off-premises lunch run to that cafe within the ordinary spatial boundaries of her employment. Holding otherwise would unduly expand the scope of employment. Every off-site location regularly patronized by an employee for personal purposes could potentially be considered within the ordinary spatial boundaries of the employment. Such a holding would also blur the rule that conduct occurring during an employee's *off-premises* lunch hour is outside the scope of employment. *See, e.g.*, 1 Arthur Larson, The Law of Workmen's Compensation § 15.51 (1992).

## CONCLUSION

Viewing all relevant facts in the light most favorable to Christensen and Fausett, we conclude reasonable minds would not disagree that Swenson was acting outside the scope of her employment at the time of the accident. Therefore, we affirm the trial court's grant of summary judgment in favor of Burns.

ORME and BENCH, JJ., concur.