Jeff CHRISTENSEN and Kyle James Fausett, Plaintiffs and Petitioners,

v.

Gloria SWENSON and Burns International Security Services, Defendants and Respondents.

No. 930048.

Supreme Court of Utah.

May 9, 1994.

Thomas R. Patton, Lynn C. Harris, Provo, and Vicki Rinne, Highland, for plaintiffs and petitioners.

Mark J. Williams, Salt Lake City, for defendants and respondents.

## ON CERTIORARI TO THE UTAH COURT OF APPEALS

DURHAM, Justice:

This case is before the court on a petition for a writ of certiorari to the Utah Court of Appeals. Plaintiffs Jeff Christensen and Kyle James Fausett claim that the court of appeals erred when it concluded that defendant Burns International Security Services ("Burns") was not liable under the doctrine of respondeat superior for the actions of its employee, Gloria Swenson. The court of appeals determined that Swenson was acting outside the scope of her employment at the time of her automobile accident with Christensen and Fausett and therefore affirmed the trial court's grant of summary judgment. *Christensen v. Burns Int'l Sec. Servs.*, 844 P.2d 992, 995 (Utah Ct.App.1992). We reverse.

Burns provides security services for the Geneva Steel Plant ("Geneva") in Orem, Utah. Burns employed Swenson as a security guard in June 1988. On the day of the accident, July 26, 1988, Swenson was assigned to guard duty at Gate 4, the northeast entrance to the Geneva property. Security guards at Gate 4 worked eight-hour continuous shifts, with no scheduled breaks. However, employees were permitted to take ten- to fifteen-minute unscheduled lunch and restroom breaks.

When taking their lunch breaks, Gate 4 guards generally ate a bag lunch but occasionally ordered take-out food from the sole restaurant within close physical proximity to Gate 4, the Frontier Cafe. The Frontier Cafe was located directly across the street from the Geneva plant, approximately 150 to 250 yards from Gate 4. The cafe's menu was posted near the telephone at Gate 4. Aside from vending machines located within a nearby Geneva office building, the Frontier Cafe provided the sole source of food accessible to Gate 4 guards within their ten- to fifteen-minute breaks. Indeed, the Frontier Cafe was the only restaurant in the immediate area. Whether they brought their lunches or ordered from the cafe, Gate 4 guards were expected to eat at their posts.

Shortly after 11:00 a.m. on the day of the accident, Swenson noticed a lull in the traffic at Gate 4 and decided to get a cup of soup from the Frontier Cafe. She placed a telephone order for the soup from Gate 4 and then drove her automobile to the cafe. She intended to pick up the soup and return to Gate 4 to eat at her post. She expected the round trip to take approximately ten to fifteen minutes, as permitted by Burns' unscheduled break policy. On her return trip, however, she collided with plaintiffs' motorcycle at a public intersection just outside Geneva's

property. Both Christensen and Fausett were injured.

Christensen and Fausett filed a negligence action against Swenson and Burns. After answering the complaint, Burns moved for summary judgment, claiming that it was not liable under the doctrine of respondeat superior because Swenson was not acting within the scope of her employment at the time of the accident. The trial court granted Burns' motion, and Christensen and Fausett appealed. The court of appeals affirmed the trial court's decision, concluding that reasonable minds could not disagree that Swenson was acting outside the scope of her employment at the time of the accident. *Christensen*, 844 P.2d at 995. We granted plaintiffs' petition for certiorari.

Summary judgment is appropriate when the record indicates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1039 (Utah 1991). We review a trial court's order granting summary judgment for correctness, according no deference to the trial court's legal conclusions. *Clover*, 808 P.2d at 1039–40; *Blue Cross & Blue Shield v. State*, 779 P.2d 634, 636 (Utah 1989). In addition, we view all relevant facts and all inferences arising from those facts in the light most favorable to the party opposing the motion. *Clover*, 808 P.2d at 1039. Should we conclude that a genuine issue of material fact exists, we must reverse the grant of summary judgment and remand for trial on that issue. *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1989).

■■■ Under the doctrine of respondeat superior, employers are vicariously liable for torts committed by employees while acting within the scope of their employment. *Clover*, 808 P.2d at 1040. Whether an employee is acting within the scope of her employment is ordinarily a question of fact. *Id.* The

question must be submitted to the jury " 'whenever reasonable minds may differ as to whether the [employee] was at a certain time involved wholly or partly in the performance of [the employer's] business or within the scope of employment.' " *Id.* (quoting *Carter v. Bessey*, 97 Utah 427, 432, 93 P.2d 490, 493 (1939)). However, when the employee's activity is so clearly within or outside the scope of employment that reasonable minds cannot differ, the court may decide the issue as a matter of law. *Id.; Birkner v. Salt Lake County*, 771 P.2d 1053, 1057 (Utah 1989).

■■ In *Birkner*, we stated that acts falling within the scope of employment are " 'those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of employment.' " 771 P.2d at 1056 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 70, at 502 (5th ed. 1984)). We articulated three criteria helpful in determining whether an employee is acting within or outside the scope of her employment. First, the employee's conduct must be of the general kind the employee is hired to perform, that is, "the employee must be about the employer's business and the duties assigned by the employer, as opposed to being wholly involved in a personal endeavor." *Id.* at 1056–57. Second, the employee's conduct must occur substantially within the hours and ordinary spatial boundaries of the employment. *Id.* at 1057. Finally, "the employee's conduct must be motivated, at least in part, by the purpose of serving the employer's interest." *Id.*

The court of appeals held that Swenson was not substantially within the ordinary spatial boundaries of her employment because the accident did not occur on Geneva property.[1] *Christensen*, 844 P.2d at 995.

---

1. We note that in reaching its decision, the court of appeals construed *Clover v. Snowbird Ski Resort*, 808 P.2d 1037 (Utah 1991), as establishing a literal approach to the second *Birkner* criterion. The court of appeals interpreted *Clover's* application of the second *Birkner* criterion as turning on the fact that the employee's conduct took place

" 'on his employer's premises.' " *Christensen v. Burns Int'l Sec. Servs.*, 844 P.2d 992, 995 (Utah Ct.App.1992) (quoting *Clover*, 808 P.2d at 1041). Relying on that language, the court of appeals concluded that because Swenson's accident did not occur on "the premises of the Geneva Steel Plant[,]" the accident necessarily did not occur

Christensen and Fausett argue that the court of appeals erred in its application of the second criterion identified in *Birkner*. Burns responds that the court of appeals properly construed the second *Birkner* criterion in holding that Swenson was acting outside the scope of her employment at the time of the accident.

■ Because the court of appeals concluded that Swenson failed to satisfy the second *Birkner* criterion, it did not address the first and third criteria. *See Christensen,* 844 P.2d at 995. However, our review of the record indicates that reasonable minds could differ on all three criteria. Thus, to avoid a second summary judgment on remand, we address all three of the *Birkner* criteria.

The first *Birkner* criterion requires that the employee's conduct be of the general kind the employee is hired to perform, that is, "the employee must be about the employer's business and the duties assigned by the employer, as opposed to being wholly involved in a personal endeavor." *Birkner,* 771 P.2d at 1056–57. Reasonable minds could differ as to whether Swenson was about Burns' business when she was involved in the traffic accident between Gate 4 and the Frontier Cafe.

We base this conclusion on two disputed issues of material fact. First, Swenson claims that Burns employed her as a security guard to "see and be seen" on and around the Geneva plant. Thus, traveling the short distance to the Frontier Cafe in uniform arguably heightened the secure atmosphere that Burns sought to project. Burns, on the other hand, claims that Swenson was not hired to perform that function. Burns' position is supported by the deposition of another security guard who stated that he considered lunch trips to the Frontier Cafe to be entirely personal in nature.

A second material issue of fact remains as to whether Burns tacitly sanctioned Gate 4 guards' practice of obtaining lunch from the

Frontier Cafe. Burns expected its Gate 4 guards to work eight-hour continuous shifts and to remain at their posts as much as possible. However, because Burns also recognized that the guards must at times eat meals and use the restroom, the company permitted them to take ten- to fifteen-minute paid breaks. The record indicates that Burns was aware that its employees occasionally traveled to the Frontier Cafe during these unscheduled breaks but had never disciplined them for doing so. Indeed, Swenson asserts that a menu from the Frontier Cafe was posted in plain view at Gate 4. Thus, reasonable minds could differ as to whether Burns tacitly sanctioned, or at least contemplated, that its guards would satisfy their need for nourishment by obtaining meals from the Frontier Cafe.

The second *Birkner* criterion states that the employee's conduct must occur substantially within the hours and ordinary spatial boundaries of the employment. *Birkner,* 771 P.2d at 1057. It is undisputed that Swenson's action occurred within the hours of her employment. She was at her post and in uniform when she decided to take advantage of a lull in plant traffic to eat lunch.

With respect to spatial boundaries, we find that reasonable minds might differ as to whether Swenson was substantially within the ordinary spatial boundaries of her employment when traveling to and from the Frontier Cafe. Again, the court of appeals concluded that Swenson did not pass this criterion because the accident did not occur on Geneva property. *Christensen,* 844 P.2d at 995. While it is true that Swenson was not on Geneva property when the accident occurred, she was attempting to obtain lunch from a restaurant within the geographic area accessible during her ten- to fifteen-minute break. Given the other facts of this case, reasonable minds could differ as to whether Swenson's trip to the Frontier Cafe fell sub-

---

substantially within the ordinary spatial boundaries of her employment. *Id.*
 We did not intend to establish such a bright-line rule in *Clover.* The *Birkner* criteria cannot be rigidly applied to every fact pattern. Some flexibility is required to address situations, like

the instant case, where the employee's conduct is technically outside the physical boundaries of her employer's premises but arguably substantially within the ordinary spatial boundaries of the employment.

stantially within the ordinary spatial boundaries of her employment.[2]

Furthermore, Burns could not point to specific orders barring guards from leaving the facility in their own vehicles to go to the Frontier Cafe on break, although two managers opined that such behavior was prohibited. This dispute alone presents a genuine issue of material fact. If guards were expressly forbidden to drive to the Frontier Cafe to pick up lunch during their break, a jury could find that Swenson was substantially outside the ordinary spatial boundaries of her employment; if they were not so forbidden, a jury might find her to have been acting substantially within the ordinary spatial boundaries of her employment.[3]

Under the third criterion of the *Birkner* test, "the employee's conduct must be motivated, at least in part, by the purpose of serving the employer's interest." *Birkner*, 771 P.2d at 1057. Applying this criterion to the instant case poses the question of whether Swenson's trip to the Frontier Cafe was motivated, at least in part, by the purpose of serving Burns' interest. Reasonable minds might also differ on this question.

First, two Burns managers admitted in their depositions that employee breaks benefit both the employee and the employer. Employees must occasionally eat meals and use the restroom, and employers receive the corresponding benefit of productive, satisfied employees. Reasonable minds could differ as to whether Swenson's particular break fell into this mutual-benefit category.

Second, given the continuous-shift nature of the job and the comparatively brief breaks permitted, Burns' break policy obviously placed a premium on speed and efficiency.

Swenson claimed that traveling to the Frontier Cafe enabled her to obtain lunch within the allotted period and thus maximize the time spent at her post. In this respect, reasonable minds might conclude that Swenson's conduct was motivated, at least in part, by the purpose of serving Burns' interest. Evidence indicating that Swenson tried to save time on her lunch break by phoning her order ahead, driving instead of walking, and attempting to return immediately to her post is also relevant in this regard.

In sum, we hold that reasonable minds could differ as to whether Swenson was acting within or outside the scope of her employment when she collided with plaintiffs' motorcycle. Thus, summary judgment is inappropriate. We reverse and remand for further proceedings.

ZIMMERMAN, C.J., STEWART, Associate C.J., and GREENWOOD, Court of Appeals Judge, concur.

HOWE, Justice, concurring:

I concur. I write to address the concerns of the court of appeals when, in affirming the summary judgment in favor of Burns, it wrote:

> Holding otherwise would unduly expand the scope of employment. Every off-site location regularly patronized by an employee for personal purposes could potentially be considered within the ordinary spatial boundaries of the employment. Such a holding would also blur the rule that conduct occurring during an employee's *off-premises* lunch hour is outside the scope of employment. *See, e.g.,* 1 Arthur Larson, The Law of Workmen's Compensation § 15.51 (1992).

boundaries of the employment." *Christensen,* 844 P.2d at 995. However, we note that this case is before us on a petition to review the court of appeals' affirmance of *summary judgment.* Thus, our opinion establishes only that, under the facts of this case, reasonable minds may differ as to whether Swenson's accident occurred substantially within the ordinary spatial boundaries of her employment. We do not hold that all lunch breaks, no matter where or when taken, fall within the scope of employment. Furthermore, we think that lines can successfully be drawn to avoid the court of appeals' concerns.

---

2. Moreover, as we have already noted, the record indicates that Burns was aware that Gate 4 guards occasionally traveled to the Frontier Cafe for lunch and that the company may have tacitly sanctioned the practice. Reasonable minds could differ as to whether such a tacit sanction brought the Frontier Cafe substantially within the ordinary spatial boundaries of Swenson's employment.

3. We acknowledge the court of appeals' concern that ruling in favor of Swenson could result in "[e]very off-site location regularly patronized by an employee for personal purposes [to] potentially be considered within the ordinary spatial

*Christensen v. Burns Int'l Sec. Servs.,* 844 P.2d 992, 995 (Utah Ct.App.1992).

Larson in his treatise recognizes exceptions to the general rule relied on by the court of appeals. One such exception is where the employee is paid during the time taken out for lunch or coffee and to suit the employer's convenience, the employee rushes out to "get a quick bite to eat, and [hurries] back because of the pressure of work.... Here the very making of a lightning excursion for lunch is an effort expended in the employer's interest to conserve his time." 1 Arthur Larson, *The Law of Workmen's Compensation,* § 15.52 (1993). Larson cites many cases where the exception was relied on. Only one need be mentioned. In *Shoemaker v. Snow Crop Marketers Division of Clinton Foods, Inc.,* 74 Idaho 151, 258 P.2d 760 (1953), an employee was awarded compensation when he was injured while retrieving his packed lunch from a building adjoining his employer's premises. He was on paid time and under orders of his employer to hurry back.

Although the case presently before the court is not a workers' compensation case, I believe that this well-recognized exception may be applicable here, as the majority opinion correctly opines.

GREENWOOD, Court of Appeals Judge, sat to fill the vacancy on the court.