Corey WHITE, Plaintiff and Appellant,

v.

Gary L. DESEELHORST, NP Ski Corporation, LL Ski Corporation, and Bravo Ski Corporation dba Solitude Ski Resort Company, Defendants and Appellees.

No. 920328.

Supreme Court of Utah.

Aug. 16, 1994.

Mitchell R. Jensen, John Farrell Fay, J. Craig Swapp, Jim Mouritsen, Salt Lake City, for plaintiff.

Jay E. Jensen, Robert K. Hilder, Salt Lake City, for defendants.

DURHAM, Justice:

Plaintiff Corey White appeals the Third District Court's grant of summary judgment in favor of defendant Solitude Ski Resort.[1] White contends that the trial court erroneously dismissed his negligence claim on the basis of Utah's inherent risks of skiing statute. Utah Code Ann. §§ 78–27–51 to –54. We reverse.

---

1. The named defendants are Gary L. Deseelhorst, NP Ski Corporation, LL Ski Corporation, and Bravo Ski Corporation dba Solitude Ski Resort Company. In this opinion, defendants are collectively referred to as "Solitude."

Because the trial court dismissed White's claim on summary judgment, we relate the facts and all reasonable inferences arising therefrom in the light most favorable to him. *Christensen v. Swenson*, 874 P.2d 125, 127 (Utah 1994). On April 22, 1988, White was injured in a skiing accident at Solitude Ski Resort. At the time of the accident, White was twenty-two years old and characterized himself as an advanced skier, although he was not skilled in ski jumping or mogul skiing. He generally skied three or more times per season and had already skied twice that winter. White was somewhat familiar with Solitude, having skied there roughly seven times in prior seasons.

On the day of the accident, White and a skiing companion arrived at Solitude around noon. The weather was warm, the skies were clear, and the snow was heavy and wet. Both White and his companion purchased a half-day lift ticket and then rode the Powder Horn lift to the top of the mountain. From there, they skied on a groomed trail to the top of the Paradise run. Paradise is an ungroomed, mogul-filled run that Solitude has designated "most difficult."

White and his companion began skiing down Paradise. White's companion had difficulty with the run, and it became apparent that she needed an easier route down the mountain. White skied to a point near the bottom of Paradise and directed her toward a gentler slope. He told her to meet him in a flat area near the bottom of the run.

White then began his final descent. He skied roughly thirty feet on a moderately steep slope toward a natural ridge or knoll. As he came over the ridge, he noticed a trail that cut directly across the Paradise run. He had been unable to see the trail earlier because it fell within a blind spot created by the ridge. The last thing White remembers is attempting to make an evasive maneuver to his left, apparently to avoid the trail.

The trail that White saw as he came over the ridge had been formed early in the season by novice skiers traversing the slope to negotiate an easier route down the mountain. To prevent it from becoming too rough, Solitude occasionally smoothed the trail with its snow grooming equipment. Such trails are commonly called "cat tracks."

Teresa Gates was skiing on the cat track as White came down Paradise. She testified that she heard someone on the trail above her and, as she looked up, saw White in the air roughly ten to fifteen feet ahead of her. She stated that he was upright and seemed to be in control as he passed over the cat track but gradually rotated backward as he flew through the air. White landed on his neck and upper back approximately fifty feet below the cat track. He fractured his spine and now suffers permanent total paralysis of his lower extremities.

In November 1988, White filed this negligence action against Solitude. White claims that Solitude negligently designed and maintained the cat track and that it failed to adequately warn skiers of the cat track's location. White supports his position with expert testimony indicating that the run was improperly designed and should have been marked. In his deposition, White's expert testified that ski industry safety standards require that ski resorts locate cat tracks where they can be seen by skiers as they descend the mountain or, where this is not possible, that resorts adequately warn skiers of the cat track's location. Solitude's corps of experts strongly disagreed. They testified that the cat track was properly designed and that no warning of its location was necessary.[2]

In June 1992, the trial court granted Solitude's motion for summary judgment. According to the trial court, White failed to raise a material issue concerning the appropriate standards for designing and maintain-

---

**2.** Solitude's experts further opined that the cause of the accident was White's excessive speed and failure to ski in control rather than the design of the cat track or its lack of warning signs. However, given the procedural posture of this case, we must accept White's version. White testified that he was not out of control when he skied over the ridge, and the testimony of his expert supports that position.

ing ski runs. The court therefore concluded that White's accident resulted from an inherent risk of skiing and was barred by Utah's inherent risks of skiing statute. White appeals.

 The standard for reviewing a grant of summary judgment is well established. Summary judgment is proper when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Christensen*, 874 P.2d at 127; *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1039 (Utah 1991). Because summary judgment is granted as a matter of law, we review the trial court's ruling for correctness. *Christensen*, 874 P.2d at 127; *Hunsaker v. State*, 870 P.2d 893, 896 (Utah 1993).

We also note that summary judgment is generally inappropriate to resolve negligence claims and should be employed "only in the most clear-cut case." *Ingram v. Salt Lake City*, 733 P.2d 126, 126 (Utah 1987) (per curiam); *see also Dwiggins v. Morgan Jewelers*, 811 P.2d 182, 183 (Utah 1991); *Hunt v. Hurst*, 785 P.2d 414, 415 (Utah 1990); *Apache Tank Lines, Inc. v. Cheney*, 706 P.2d 614, 615 (Utah 1985) (per curiam); *Williams v. Melby*, 699 P.2d 723, 725 (Utah 1985); *Wycalis v. Guardian Title*, 780 P.2d 821, 825 (Utah Ct.App.1989), *cert. denied*, 789 P.2d 33 (Utah 1990). "Ordinarily, whether a defendant has breached the required standard of care is a question of fact for the jury." *Jackson v. Dabney*, 645 P.2d 613, 615 (Utah 1982); *see also Dwiggins*, 811 P.2d at 183. "Accordingly, summary judgment is inappropriate unless the applicable standard of care is 'fixed by law,' and reasonable minds could reach but one conclusion as to the defendant's negligence under the circumstances." *Wycalis*, 780 P.2d at 825 (citations omitted); *see also Butler v. Sports Haven Int'l*, 563 P.2d 1245, 1246 (Utah 1977).

We first examine the applicability of Utah's inherent risks of skiing statute. The statute provides that "no skier may make

any claim against, or recover from, any ski area operator for injury resulting from any of the inherent risks of skiing." Utah Code Ann. § 78–27–53.[3] The statute defines inherent risks of skiing as

those dangers or conditions which are an integral part of the sport of skiing, including, but not limited to: changing weather conditions, variations or steepness in terrain; snow or ice conditions; surface or subsurface conditions such as bare spots, forest growth, rocks, stumps, impact with lift towers and other structures and their components; collisions with other skiers; and a skier's failure to ski within his own ability.

*Id.* § 78–27–52(1).

 In *Clover v. Snowbird Ski Resort*, 808 P.2d 1037 (Utah 1991), we explained that the statute grants only limited immunity; it "does not purport to grant ski area operators complete immunity from all negligence claims initiated by skiers." *Id.* at 1044. *Clover* also clarified the manner in which the statute is to be applied. Courts cannot determine that a risk is inherent in skiing simply by asking whether it happens to be one of those listed in section 78–27–52(1). That list is expressly nonexclusive and thus contemplates the inclusion of hazards other than those specifically set forth. In addition, any hazard, listed or unlisted, is limited by the phrase "integral part of the sport of skiing." Utah Code Ann. § 78–27–52(1). Accordingly, to determine whether the statute applies, we must decide whether the particular risk which allegedly caused White's injury was an integral part or essential characteristic of the sport of skiing. *See Clover*, 808 P.2d at 1044, 1047; *see also* Paige Bigelow, Development, *Ski Resort Liability for Negligence Under Utah's Inherent Risks of Skiing Statute*, 1992 Utah L.Rev. 311, 317.

 As explained in *Clover*, risks that are inherent in skiing, or essential characteristics of skiing, can be divided into two cate-

---

**3.** In 1993, the inherent risks of skiing statute was slightly modified. *See* Utah Code Ann. § 78–27– 52 (Supp.1993). These modifications, however, are not relevant to the present case.

gories. *Clover*, 808 P.2d at 1047. The first consists of risks that skiers wish to confront while skiing, for example, steep grades, powder, and mogul runs. Under the statute, the ski resort is relieved of any obligation to eliminate these types of dangers. *Id.*[4] The second category includes risks that skiers do not wish to confront, such as "bare spots, forest growth, rocks, stumps, ... lift towers and other structures." Utah Code Ann. § 78–27–52(1). Such risks are also generally deemed inherent in skiing. If they can be eliminated by reasonable care, however, they are not considered an inherent risk and the statute does not apply. *Clover*, 808 P.2d at 1047.[5] If the risk cannot be eliminated by the use of reasonable care, then the statute simply requires ski resorts to "warn their patrons, in the manner prescribed in the statute, of the general dangers patrons must confront when participating in the sport of skiing." *Id.*

■ The risk at issue in this case falls into the second category outlined in *Clover*. An unmarked cat track on the blind side of a ridge is not the type of risk that a skier proceeding down the Paradise run would wish to confront. Rather, it is analogous to a bare spot, rock, or tree stump. The question then becomes whether Solitude could have alleviated this risk through the exercise of ordinary care. Because White's claim was dismissed on summary judgment, we must determine whether reasonable minds could disagree on this issue. If so, summary judg-

ment on the basis of the inherent risks of skiing statute was inappropriate; if not, summary judgment was proper.

It is undisputed that cat tracks are a common and necessary feature at ski resorts. They allow novice skiers an easier route down the mountain and provide access to upper portions of the mountain for grooming machines and other maintenance equipment. Because cat tracks are so pervasive and important to the sport, it is unlikely that ski resorts could alleviate all of the possible harms that may result from them. Thus, in most cases they would constitute an inherent risk of skiing. White's claim, however, is exceedingly narrow. He contends that this particular cat track was in close proximity to a ridge on the Paradise run and that it fell within a blind spot created by that ridge. Based upon these unique physical characteristics, White's expert opined that Solitude could have eliminated the hazard by either locating the cat track elsewhere or placing warning signs along the cat track to alert skiers of its location. He claimed that his views represented "state-of-the-art methodology in the industry." Solitude's experts disagreed. In their opinion, situations such as this are common at ski resorts and warning signs are not necessary. Both positions are tenable. Given this conflict, we cannot say as a matter of law that Solitude could not have alleviated this hazard through the exercise of ordinary care. Summary judgment was therefore inappropriate.[6]

■ We next consider Solitude's argument that even if White's claim is not barred by

---

**4.** Ski resorts do have an obligation to use reasonable care when informing skiers of a ski run's degree of difficulty. *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1047 n. 53 (Utah 1991). Nevertheless, claims that fall within this category of risks remain particularly amenable to resolution as a matter of law. In other words, a claim arising from a risk that skiers wish to confront is properly dismissed on a motion for summary judgment provided the resort has adequately informed skiers of the degree of difficulty of the ski run. This is consistent with the stated purpose of the statute, which is "to establish as a matter of law that certain risks are inherent in [the] sport." Utah Code Ann. § 78–27–51.

**5.** This requirement, along with our case-by-case construction of the statute, provides ski resorts and courts some flexibility in adapting to

changes in technology that improve skiing safety. In discussing the importance of such flexibility, one commentator noted, "As methods of grooming and maintaining slopes improve[ ], certain risks 'inherent' in the sport at an early time [may be] eliminated." Wendy A. Faber, Comment, *Utah's Inherent Risks of Skiing Act: Avalanche from Capitol Hill*, 1980 Utah L.Rev. 355, 359–60.

**6.** Our conclusion that reasonable minds may differ on whether Solitude could have eliminated the hazard does not, of course, forever preclude application of the inherent risks of skiing statute. If a fact finder ultimately concludes that the cat track was properly designed and that warning signs were unnecessary, White's claim would be barred.

the inherent risks of skiing statute, it should nonetheless be dismissed because he has failed to make a sufficient showing of causation, a prima facie element of negligence. Solitude claims that in order to recover, White must demonstrate that he actually hit the cat track, thereby causing his injuries. White's response is twofold. First, he contends there is evidence in the record that he hit the cat track. Second, he maintains that he need not prove he actually hit the cat track; instead, fear of hitting the cat track may have caused him to lose control and ultimately crash.

We agree with Solitude that there is little if any evidence in the record tending to prove either theory of causation. Solitude, however, did not move for summary judgment on this issue. Instead, Solitude argued only that White's claim was barred by the inherent risks of skiing statute. The trial court agreed and dismissed White's claim on that basis.

■ Solitude correctly points out that we may affirm the judgment on any ground, even one not relied upon by the trial court. *See West v. Thomson Newspapers*, 872 P.2d 999, 1012 n. 22 (Utah 1994); *Higgins v. Salt Lake County*, 855 P.2d 231, 241 (Utah 1993); *Hill v. Seattle First Nat'l Bank*, 827 P.2d 241, 246 (Utah 1992). "However, any rationale for affirming a decision must find support in the record." *Hill*, 827 P.2d at 246. While the record as it presently stands contains little evidence of causation, it appears that there was not a sufficient opportunity for the record to be fully developed on this issue. Solitude moved for summary judgment solely on the basis of the inherent risks of skiing statute. In responding to Solitude's

motion, White was not obligated to raise a material issue of fact on the separate issue of causation. Indeed, Solitude's motion failed to put White on notice that causation was at issue. White, therefore, may not have introduced all of the causation evidence available to him when the trial court ruled on Solitude's motion.

The record gives some indication that this was the case. Following the entry of judgment, White moved for relief from judgment or order pursuant to rule 60(b)(7) of the Utah Rules of Civil Procedure. In this motion, White squarely addressed the causation issue for the first time. He attached to his motion a written statement taken by Solitude's ski patrol in which a witness to the accident claims that he saw White hit a "ledge" and go out of control. This "ledge" may be a reference to the cat track in question. If so, there is at least one witness who saw White hit the cat track. While this evidence is slim and does not conclusively establish causation, it may be sufficient to controvert Solitude's claim that White never came in contact with the cat track.[7] Thus, while we agree that the record as it presently stands contains little evidence of causation, it appears that Solitude's motion did not put causation at issue, thereby preventing full development of the record. The record as it presently stands does not support dismissing White's claim for failure to demonstrate causation.

In conclusion, although we have some doubt as to whether White will be able to convince a trier of fact that he should prevail, the procedural posture of this case requires that we resolve this doubt in White's favor. We therefore reverse the grant of summary judgment and remand to the trial court for

7. We emphasize that in discussing this statement, we do not pass on its admissibility or reliability. Such decisions lie within the province of the trial court and trier of fact. Nevertheless, our reference to the document is appropriate to demonstrate that the record on causation may not have been fully developed. Ironically, Solitude urges us to disregard this document because it was not submitted to the trial court or made part of the record. In essence, Solitude asks us to affirm summary judgment on an issue not raised before the trial court and, at the same time, refuse to consider potentially relevant evidence because it was not presented to the trial court, apparently because Solitude failed to raise the issue in its original motion.

further proceedings.[8]

STEWART, Associate C.J., and HOWE, J., concur.

ZIMMERMAN, Chief Justice, concurring:

I concur in the majority opinion. I may not agree with *Clover v. Snowbird Ski Resort*, 808 P.2d 1037 (Utah 1991), a decision in which I did not participate, but it was decided by the highest court of this state and the construction it gave to the inherent risks of skiing statute is the law in Utah. No new facts relevant to the correctness of that decision have come to light since it was handed down. If the legislature disagrees with *Clover*'s construction of the inherent risks of skiing statute, it can change it, but we should leave the matter where it lies. Justice Russon's suggestions to the contrary notwithstanding, this case cannot be legitimately analogized to *State v. Menzies*. The only basis Justice Russon offers for overruling *Clover* is that he disagrees with it. That certainly does not satisfy *Menzies'* careful requirements for overruling prior case law.

RUSSON, Justice, dissenting:

I respectfully dissent. The majority opinion contradicts the plain language of the inherent risks of skiing statute, Utah Code Ann. §§ 78–27–51 to –54 (1992), which clearly and unambiguously states that any danger or condition integral to the sport of skiing is "as a matter of law" an inherent risk of skiing and that no skier may recover from any ski area operator for injury resulting from any of the inherent risks of skiing.

Statutes should generally be construed according to their plain language. *Brinkerhoff v. Forsyth*, 779 P.2d 685, 686 (Utah 1989); *accord Allisen v. American Legion Post No. 134*, 763 P.2d 806, 809 (Utah 1988). Moreover, "[u]nambiguous language in the statute may not be interpreted to contradict its plain meaning." *Bonham v. Morgan*, 788 P.2d

497, 500 (Utah 1989). In accordance with these principles, when reviewing a statute, we "assume[ ] that each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *Savage Indus., Inc. v. Utah State Tax Comm'n*, 811 P.2d 664, 670 (Utah 1991). Put differently, "[w]e must be guided by the law as it is.... When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction." *Hanchett v. Burbidge*, 59 Utah 127, 135, 202 P. 377, 379–80 (1921). Thus, when "statutory language is plain and unambiguous, this Court will not look beyond the same to divine legislative intent." *Brinkerhoff*, 779 P.2d at 686; *accord Allisen*, 763 P.2d at 809.

The inherent risks of skiing statute is plain and unambiguous. It begins by clearly stating its purpose:

It is the purpose of this act ... to clarify the law in relation to skiing injuries and the risks inherent in the sport, to establish *as a matter of law* that certain risks are inherent in that sport, and to provide that, as a matter of public policy, no person engaged in that sport shall recover from a ski operator for injuries resulting from those inherent risks.

Utah Code Ann. § 78–27–51 (1992) (emphasis added). The clear intent of this section is to enumerate certain risks inherent in the dangerous sport of skiing and, *as a matter of law*, to prohibit skiers injured as a result of such risks from recovering from ski area operators.

In defining these inherent risks of skiing, the statute provides:

"Inherent risks of skiing" means those dangers or conditions which are an integral part of the sport of skiing, including, but not limited to: changing weather conditions, variations or steepness in terrain; snow or ice conditions; surface or subsurface conditions such as bare spots, forest

---

8. In light of our disposition of this case, it is unnecessary to reach the constitutional issues raised by White.

growth, rocks, stumps, impacts with lift towers and other structures and their components; collisions with other skiers; and a skier's failure to ski within his own ability.

Utah Code Ann. § 78–27–52(1) (1992). According to the unambiguous language of the statute as a whole, (1) any danger or condition integral to the sport of skiing is *as a matter of law* an inherent risk of skiing and (2) a skier cannot recover from ski area operators for injuries resulting from the inherent risks of skiing.

While the majority has correctly applied the law as set forth in *Clover v. Snowbird Ski Resort*, 808 P.2d 1037 (Utah 1991), I believe that *Clover* is clearly wrong and constitutes nothing more than judicial legislation. It should be abandoned as precedent.[1] The inherent risks of skiing statute does not, as *Clover* and the majority state, categorize inherent risks, nor does it establish a "reasonable care" standard for certain types of inherent risks. To the contrary, it plainly states that "*no* skier may make *any* claim against, or recover from, *any* ski area operator for injury resulting from *any* of the inherent risks of skiing." Utah Code Ann. § 78–27–53 (1992) (emphasis added). Rather than misconstruing the plain language of the inherent risks of skiing statute in order to formulate a judicially prescribed result, this court should apply the plain language of that statute to the facts in this case and leave the possible infirmities of the statute for the legislature to remedy.[2]

In the case before us, White was injured while skiing down Paradise ski trail, an ungroomed, mogul-filled run designated as "most difficult." The accident occurred in an area where Wanderer cat track crossed Paradise trail. It is undisputed that cat tracks are a common and necessary feature at ski resorts. Not only, as the majority notes, do they allow an easier way down the mountain for novice skiers and provide snow grooming equipment access to upper portions of the mountain, but they also are used by skilled skiers as routes from trail to trail. As such, they are integral to the sport of skiing.

Cat tracks, like moguls, lift towers, bare spots, rocks, changing weather, snow or ice conditions, variations or steepness in terrain, and surface or subsurface conditions, are often out of the skier's sight until immediately approached. However, these are exactly the sort of risks that the statute contemplates in stating that "no skier may make any claim against, or recover from, any ski area operator for injury resulting from any of the inherent risks of skiing." Utah Code Ann. § 78–27–53 (1992). Since White's injuries were a result of an "inherent risk[ ] of skiing," sec-

---

1. Although I fully understand the principle of stare decisis and the necessity thereof, it should not be adhered to when the rule established by a case was originally erroneous and more good than harm will come from departing from precedent. *State v. Menzies*, 235 Utah Adv.Rep. 23, 25 & n. 3 —— P.2d ——, —— & n. 3 (March 29, 1994). As Justice Felix Frankfurter aptly noted, "[S]tare decisis is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable...." *Helvering v. Hallock*, 309 U.S. 106, 119, 60 S.Ct. 444, 451, 84 L.Ed. 604 (1940). In keeping with this rule, this court has "not hesitated ... to reverse case law when we are firmly convinced that we have erred earlier." *Staker v. Ainsworth*, 785 P.2d 417, 424 n. 5 (Utah 1990); *see, e.g., Menzies*, 235 Utah Adv.Rep. at 25; —— P.2d at —— *State v. Hansen*, 734 P.2d 421, 427 (Utah 1986); *State v. Tuttle*, 713 P.2d 703, 704 (Utah 1985). *Clover* is just such a case.

2. While such an approach may occasionally result in decisions that seem harsh or unfair, it is for the legislature, not the judiciary, to remedy such results by amending or repealing the statute. Indeed, "[i]f the act is unjust, amendments to correct the inequities should be made by the legislature and not by judicial interpretation." *Masich v. United States Smelting, Ref. & Mining Co.*, 113 Utah 101, 126, 191 P.2d 612, 625, *appeal dismissed*, 335 U.S. 866, 69 S.Ct. 138, 93 L.Ed. 411 (1948); *see also Condemarin v. University Hosp.*, 775 P.2d 348, 377 (Utah 1989) (Hall, C.J., dissenting) ("[I]t is not our prerogative to question the wisdom, social desirability, or public policy underlying a given statute. Those are matters left exclusively to the legislature's judgment and determination."); *Utah Mfrs.' Ass'n v. Stewart*, 82 Utah 198, 204, 23 P.2d 229, 232 (1933) ("[F]airly debatable questions as to reasonableness, wisdom, or propriety [of legislative action] are not for the courts but for the Legislature."); *accord Salt Lake City v. Ohms*, No. 930580, slip op. at n. 14, 1994 WL 457292, —— P.2d ——, —— n. 14 (Utah August 18, 1994).

tion 78–27–53 bars his claim against defendants.

The trial court correctly granted summary judgment on the ground that all the facts indicated that White's conduct came within the inherent risks of skiing statute.[3] Thus, for the reasons stated above, I would affirm the trial court's grant of summary judgment. Accordingly, I dissent.[4]

**3.** Moreover, the constitutional argument made by White on appeal is not properly before this court. White first argued his constitutional argument to the trial court only after it had granted summary judgment in favor of defendants and he had filed his notice of appeal of that judgment, raising it in his motion for relief from summary judgment filed pursuant to Utah Rule of Civil Procedure 60(b). Although the trial court properly retained jurisdiction to hear White's 60(b) motion, *see White v. State,* 795 P.2d 648, 649–50 (Utah 1990); *Baker v. Western Sur. Co.,* 757 P.2d 878, 880 (Utah Ct.App.1988), its denial of that motion was never appealed. Therefore, it would be improper to address White's constitutional argument on this appeal.

**4.** In his concurring opinion, Chief Justice Zimmerman states that because *Clover* was decided by the highest court of this state, it is the law in Utah and thus "we should leave the matter where it lies." It should be noted, however, that although the Chief Justice advocates strict adherence to the doctrine of stare decisis in this case, this court has not hesitated to overrule prior precedent in other less-compelling cases. *See, e.g., Menzies,* 235 Utah Adv.Rep. at 25, —— P.2d at —— (overruling twenty years of supreme court precedent, based in part on court's assertion that its "rule does not work very well"); *Hansen,* 734 P.2d at 427 (overruling supreme court precedent because it misconstrued statute and "the decision [was] a recent one"); *Tuttle,* 713 P.2d at 704 (overruling supreme court precedent because its reasoning was "unpersuasive").

In an apparent attempt to offer a solution to *Clover's* misguided decision, the Chief Justice states that if the legislature disagrees with *Clover's* interpretation of the inherent risks of skiing statute, then the legislature can amend the statute. However, given the unequivocal nature of the language *"no* skier may make *any* claim against, or recover from, *any* ski area operator for injury resulting from *any* of the inherent risks of skiing," Utah Code Ann. § 78–27–53 (1992) (emphasis added), no amendment by the legislature could make the statute any clearer than it is now.

The Chief Justice also asserts that the only basis I offer for overruling *Clover* is that I disagree with it. Of course I disagree with it; that is why I dissent. However, even a cursory review of my dissent reveals that it is firmly based on the fact that *Clover* contradicts the plain language of the statute.