JoAnna MITCHELL, individually and JoAnna Mitchell, personal representative of the Estate of Jerry Mitchell, deceased, Plaintiff and Appellant,

v.

Estate of Jerry L. RICE, and John Does 1 through V, Defendants and Appellees.

No. 930636–CA.

Court of Appeals of Utah.

Nov. 17, 1994.

James R. Hasenyager (argued), Patrick F. Holden, Marquardt, Hasenyager & Custen, Ogden, for appellant.

Robert G. Gilchrist, Barbara Berrett (argued), Richards, Brandt, Miller & Nelson, Salt Lake City, for appellee.

Before DAVIS, GREENWOOD, and WILKINS, JJ.

OPINION

DAVIS, Judge:

JoAnna Mitchell, personal representative for the estate of her deceased husband, Jerry H. Mitchell, appeals from the trial court's award of summary judgment to the estate of

Jerry L. Rice. The trial court dismissed Mrs. Mitchell's negligence action on the basis that workers' compensation precludes all other remedies pursuant to Utah Code Ann. § 35–1–60 (Supp.1994). We affirm.

## FACTS

This is a wrongful death action brought by Mrs. Mitchell, on behalf of her husband's estate, against the estate of Jerry L. Rice. On September 19, 1989, Rice and Mitchell died in an accident involving the truck they were driving under Mitchell's lease with Logistics Express (Logex). Mrs. Mitchell alleges that her husband's death resulted from Rice's negligence in driving the vehicle.

Mitchell owned the truck and drove for Logex pursuant to an independent contractor lease agreement between him and Logex. The lease agreement provided that "[o]wner [Mitchell] warrants and agrees that it shall have full and direct control and supervision over the operation of the motor vehicle." Further, "[o]wner may determine the routes of travel, points of stop for rest and service to its equipment, and shall, in every respect, direct and control its employees, including their hire, discharge, training, wages, hours and working conditions." Finally, "[o]wner shall obtain and be solely responsible for Worker's Compensation insurance for Owner and Owner's employee(s), if any. In addition, Owner shall pay all withholding and employment taxes due to Federal, State or local government on account of Owner and/or Owner's employee(s)."

Logex required that Mitchell have a Logex-approved driver accompany him on all Logex trips in excess of 500 miles. During 1989, Rice was the only individual employed by Mitchell in that capacity. On June 24, 1988, Rice signed a document prepared by Logex stating that "I [Rice] am and will continue to be an employee of Jerry Mitchell for any and all purposes in connection with the contract services provided by Logex." In addition, on August 18, 1988, Rice signed a document prepared by the Mitchells stating that he will work on a commission basis and that he will "pay all court costs and lawyer fees to obtain expense money back drawn against the truck in excess of receipts should I quit or I am terminated."

Following the accident resulting in the deaths of Mitchell and Rice, Mrs. Mitchell filed a complaint sounding in negligence against Rice's estate. Rice's estate moved for summary judgment on the grounds that Mitchell's cause of action was barred by the exclusive remedy provision of the Utah Workers' Compensation Act. Utah Code Ann. § 35–1–60 (Supp.1994). The trial court granted the motion, ruling that Mitchell and Rice had an "employment relationship." Mrs. Mitchell appeals, arguing that Rice was an independent contractor, not an employee.

## STANDARD OF REVIEW

The standard of review for an award of summary judgment is "well established." *White v. Deseelhorst,* 879 P.2d 1371, 1374 (Utah 1994). "Summary judgment is proper when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.... [W]e review the trial court's ruling for correctness." *Id.* (citations omitted).

## ANALYSIS

█ To determine whether Rice was an independent contractor or Mitchell's employee, we look primarily to the following factors: (1) whatever covenants or agreements exist concerning the right of direction and control over the employee, whether express or implied; (2) the right to hire and fire; (3) the method of payment, i.e., whether in wages or fees, as compared to payment for a complete job or project; and (4) the furnishing of the equipment. *Harry L. Young & Sons, Inc. v. Ashton,* 538 P.2d 316, 318 (Utah 1975) (footnote omitted); *accord English v. Kienke,* 848 P.2d 153, 157 (Utah 1993); *Kinne v. Industrial Comm'n,* 609 P.2d 926, 928 (Utah 1980). While all the factors have a bearing on the analysis, the first factor—"the legal right of direction and control over [the employee],"—is the "critical element underlying an employment relationship." *Kinne,* 609 P.2d at 928.

The trial court relied primarily upon *Kinne* for its conclusion that Mitchell and

Rice had an employment relationship. The facts in *Kinne* are very similar to the facts of the instant case. Plaintiff, Charles Kinne, entered into an agreement with Freeport Transport, Inc. (Freeport), whereby Kinne leased a tractor to Freeport. Under the terms of this lease, Kinne agreed to be responsible for the direction, control, salaries, and workers' compensation coverage of his employees. Kinne did not provide workers' compensation coverage as agreed.

Kinne subsequently hired Max L. Wynn as a driver for the tractor. The tractor was struck by a train while Wynn was driving, and Wynn was killed. When Wynn's widow filed for workmen's compensation benefits, Kinne responded that he was not Wynn's employer and hence had no obligation to provide workers' compensation coverage.

The supreme court noted that "[t]he question of who is an employer under a truck lease has been a recurring one before this Court." *Id.* at 927. In resolving this question, "[i]t is the *right* of control that is the critical element underlying an employment relationship in the present case." *Id.* at 928. The court agreed with the Industrial Commission that the lease agreement between Kinne and Freeport expressly "gave Kinne the legal right of direction and control over Wynn, even though such right may not have been exercised." *Id.* In addition, under the terms of the lease, "Kinne also had the right to hire and fire Wynn, he was responsible for paying Wynn's wages, and he owned and leased the tractor and trailer used by Wynn in the performance of his duties." *Id.* Therefore, the supreme court concluded that Kinne was Wynn's employer.

■ The case at bar involves a lease agreement that is very similar to the lease in *Kinne*. The lease provided that Mitchell would have "*full and direct control* and supervision over the operation of the motor vehicle," and that he would "*direct and control* [his] employees, including their hire, dis-

charge, training, wages, hours, and working conditions." Therefore, as in the lease in *Kinne*, Mitchell as lessee and owner of the vehicle possessed the "critical element" of the right of control over Rice. In addition, Rice executed documents running to both Mitchell and Logex, the terms of which were inconsistent with independent contractor status.

Mitchell contends that *Kinne* can be distinguished because: (1) both parties exercised equal power and control when driving the vehicle on a trip for Logex; (2) Rice would often refuse to accompany Mitchell on a run, a course of conduct that Mitchell claims is inconsistent with an employer-employee relationship; and (3) Rice agreed to work on a commission basis[1] and to take care of his own income and social security taxes.

■ With respect to the first two alleged distinguishing factors, *Kinne* establishes that it is the "*right* of control that is the critical element," not the *actual* control exercised. In this case, while the extent of actual control is disputed, the right of control is not. With respect to the third factor, Mitchell correctly observes that social security and withholding taxes are generally paid by employers, *Graham v. R. Thorne Foundation*, 675 P.2d 1196, 1197 (Utah 1984), and failure to make such payments is a factor that may support a conclusion that an employment relationship does not exist. However, " 'none of [the numerous factors relating to the employer-employee relationship] considered alone is completely controlling, . . . they all should be considered together in determining whether the requirements of the statute are met.' " *Id.* at 1198 (quoting *Harry L. Young & Sons*, 538 P.2d at 318).

In our consideration of all the factors set forth in *Harry L. Young & Sons*, we note that, as in *Kinne*, the lease agreement gave Mitchell the right to hire and fire Rice, the responsibility to pay Rice's wages, and Mitchell owned and leased the vehicle driven

---

1. As noted earlier, the method of payment "whether in wages or fees, as compared to payment for a complete job or project" is relevant to the determination of the type of employment relationship in existence. *Harry L. Young & Sons, Inc. v. Ashton*, 538 P.2d 316, 318 (Utah 1975). Mitchell does not cite any authority or analysis regarding the legal significance of the fact that Rice was paid a commission. We note, however, that Utah Code Ann. § 34–28–2 (1988) defines "wages" paid an employee to include payment on a commission basis. *Id.*

by Rice at the time of the accident. These factors, combined with the control granted to Mitchell over Rice by the lease agreement and documents signed by Rice, support the trial court's conclusion that the parties had an employment relationship.[2]

## CONCLUSION

Pursuant to the reasoning in *Kinne*, the right of control granted by the lease agreement to Mitchell over Rice weighs heavily in favor of a conclusion that the parties had an employment relationship. Considering the factors together, we conclude that the trial

court did not err ·in ruling that Rice was Mitchell's employee and hence, workers' compensation provides the sole remedy in this case. Accordingly, we affirm.

GREENWOOD and WILKINS, JJ., concur.

**2.** In light of our holding, we need not reach Rice's alternative argument that both Rice and Mitchell were employees of Logex.